## HENRY D. SPAIN v. THE STATE.

1. **CRIMINAL LAW.** *Capital Punishment. Jurors. Conscientious scruples.*
   Persons with conscientious scruples against the death penalty are incom-
   petent jurors in capital cases, notwithstanding the statute which per-
   mits the jury to fix the punishment at imprisonment for life.

2. **SAME.** *Verdict of imprisonment for life. Evidence.*
   It is erroneous to instruct the jury that they may adjudge such con-
   finement if the proof warrants, for their power under the statute is
   independent of the evidence.

3. **SAME.** *Supreme Court. Practice on reversal.*
   If on such instruction there is a general verdict of guilty and the ac-
   cused is sentenced to be hanged, this court cannot substitute im-
   prisonment, but must reverse and remand the case.

APPEAL from the Circuit Court of Warren County.
Hon. UPTON M. YOUNG, Judge.

The appellant, who, on April 12, 1881, was indicted for
murder, pleaded not guilty. Each of three persons drawn as
jurors stated on his *voir dire* that he had " conscientious scru-
ples against capital punishment," for which he was excluded
from the jury, and the prisoner excepted. When a verdict
was returned finding the accused guilty and recommending
him to mercy, the court ordered the jury to be conducted

back to their room, apprising them that they would find a form for their verdict in the second charge for the State. This instruction is that, if the jury simply find the accused guilty as charged in the indictment, it will be the duty of the court to pronounce the death penalty; but, if the evidence in the case warrants them in so doing, they may find him guilty as charged, "and declare that the punishment to be inflicted shall be imprisonment in the penitentiary for life," or they may find the defendant not guilty. Afterwards the jury rendered a verdict of guilty as charged, and the appellant was sentenced to be hanged.

*James R. Chalmers,* for the appellant, made an oral argument and filed a brief.

1. Several decisions of this court apparently hold that a person who has conscientious scruples against capital punishment is an incompetent juror in a case of murder. But as this point was not fully presented, and the opinions are brief and seemingly without great consideration, the argument is now pressed that, as the law does not require a murderer to be hanged, opposition to that punishment does not disqualify jurors. The leading case of *Russell* v. *State,* 53 Miss. 367, decided upon the ground that the Statute of 1872 which qualified such persons, was repealed by the Act of March 4, 1875, followed *Lewis* v. *State,* 9 S. & M. 115; *Williams* v. *State,* 32 Miss. 389, and other cases which proceeded upon the law that exacted the death penalty. Two public sentiments, one for, the other against, hanging, are expressed in this statute, and each is entitled to representation upon juries. A prisoner has a right to citizens of either sentiment as drawn from the box, and is not bound to be tried by persons who favor the infliction of death. The opinion in the case of *Jones* v. *State,* 57 Miss. 684, which seems repugnant to these views, is so short and its reasoning so laconic that it is difficult to discover its basis.

2. The second instruction given for the State is manifestly wrong. It informs the jury that they cannot make the punishment imprisonment for life unless "the evidence in the case warrants them in so doing." Under Code 1880, § 3083, however, power to fix the penalty is not dependent on the evidence. It is immaterial how atrocious the murder may be.

The jury have a right in every case to adjudge confinement instead of death. If this privilege had been understood by the jury who recommended the prisoner to mercy, it would doubtless have been exercised.

*W. R. Spears*, on the same side.

In their opposition to capital punishment the rejected jurors are in accord with many moral and good men, who regard the death penalty as a relic of barbarism. Such is the sentiment of the law-makers in this State, evidenced by the statute which permits the jury to say whether a person convicted of murder shall be hanged. Harmoniously with this just inclination of the law, a defendant in a capital case has now the right to retain jurors who are tendered him, although they are opposed to the infliction of death. In the spirit of the law empowering the jury to affix the penalty of imprisonment for life, is the right of the accused to have jurors who are disposed to that leniency.

*L. Brame*, Attorney General *pro tem.*, for the State, argued orally and in writing.

1. No sentimentality is indulged by the law in the trial of persons charged with crime. The penalty for murder is death, and jurors who are opposed to such punishment are incompetent to consider such a case. *Lewis* v. *State*, 9 S. & M. 115; *Williams* v. *State*, 32 Miss. 389; *White* v. *State*, 52 Miss. 216; *Russell* v. *State*, 53 Miss. 367; *Fortenberry* v. *State*, 55 Miss. 403; *Smith* v. *State*, 58 Miss. 867. Even where the evidence is circumstantial, jurors with scruples of that kind should be rejected. *Jones* v. *State*, 57 Miss. 684. The law-makers did not by this statute intend to secure such jurors to the accused, for it was useless to repeal the Act of 1872, which provided that opposition to capital punishment should not disqualify, if the repealing statute, by permitting juries to affix imprisonment, re-enacted the same rule. The statute as construed requires for jurors unbiassed persons who neither favor nor oppose the death penalty. Change in this construction, while showing the great injustice done by courts which have followed these decisions, will effectually abolish capital punishment in this State, for one juror who opposes the death penalty can coerce a verdict in accordance with his views.

2. The second instruction for the State is subject to criticism. The jury had the undoubted right to fix the punishment at imprisonment for life; and it was within their discretion to exercise this right in a spirit of leniency to the accused, whether the court thought they were warranted by the evidence in so doing or not. If the jury were misled by the language of this charge, and thereby prevented from giving the prisoner the benefit of the lower penalty, or if there is doubt in the mind of the court as to whether the instruction had this effect, the defendant ought not to suffer death under this verdict. But it is submitted for the judgment of the court.

CAMPBELL, J., delivered the opinion of the court.

The fact that the law permits the jury to fix the punishment at imprisonment for life, on rendering the verdict, does not make competent as a juror for the trial of a capital case one who has conscientious scruples against the infliction of capital punishment. The penalty prescribed by law for murder is death. The State is entitled to jurors free to render a verdict of guilty in a proper case, and is not required to accept those who are trammelled by scruples of conscience which would hinder the rendition of a verdict of guilty without the qualification of imprisonment for life instead of the penalty of death. The law permits either of two verdicts, viz , a verdict of guilty, to be followed by a sentence of death, and a verdict of guilty, with imprisonment in the penitentiary for life. If the State must accept jurors whose scruples of conscience as to capital punishment will preclude them from consenting to a verdict of guilty to be followed by the death penalty, it thereby abandons in advance one of the two verdicts allowable in such cases.

It is not correct to say that the State is indifferent as to which of the two verdicts may be given. It has denounced the penalty of death against murder; it permits the jury to say that another penalty shall be substituted for that prescribed by law as the appropriate one. To give the accused the right to have jurors who will not consent to the penalty of death is to preclude the punishment the law has affixed, and

to make the law itself an instrument to defeat its own execution.

Jurors should be free from bias which may hinder their consent to a verdict. If they have scruples of conscience as to the infliction of the penalty of death, they would not give a verdict of guilty in a capital case without fixing the punishment at imprisonment for life. If some of the jury had such scruples and others did not, the result might be a mistrial because of disagreement between them as to whether the verdict should be "guilty," or "guilty" with imprisonment, &c. Where there is agreement in a verdict of guilty, and disagreement as to fixing the punishment, the jury should give a verdict of guilty, because of the agreement as to that. *Green* v. *State*, 55 Miss. 454. Being thus instructed by the court, jurors who have conscientious scruples as to the penalty of death might refuse concurrence in a verdict of guilty, because of the legal consequence, if all of the jurors should not agree in fixing the punishment at imprisonment, and thus a verdict would be prevented. Prior to the law allowing the jury to fix the punishment in capital cases at imprisonment, persons having conscientious scruples as to capital punishment were liable to be excluded from the panel on that ground in that class of cases, and the right to fix the punishment was conferred in view of that disqualification of persons as jurors. The contemplation of the legislature was that a jury composed of persons not unwilling to give a verdict to be followed by sentence of death might, instead of that, fix the punishment at imprisonment. The idea was that the legal penalty might be inflicted in consequence of conviction by a jury composed of persons free from exception on account of conscientious scruples, and that such a jury should have the right to substitute imprisonment for life for the penalty prescribed by law. The purpose was not to change the rule as to the qualifications of jurors, but, leaving that as it was, to clothe such a jury as was before required with the authority conferred. In that way it was supposed the penalty of the law would be applied in capital cases, except where such a jury as was contemplated should determine otherwise.

A review of the history of legislation on this subject will

remove all doubt of the correctness of the foregoing view. The fifth section of " An Act to amend the Rules of Practice and Procedure in Criminal Cases in this State," approved April 5, 1872, provided that conscientious scruples as to the infliction of capital punishment should not disqualify one from being a juror in capital cases, and that the jury finding a verdict of guilty in a capital case might fix the punishment. This act was repealed in 1875, but the right of the jury to fix the punishment at imprisonment in capital cases was declared by the repealing act. Acts 1875, p. 79. From which it appears that the legislature determined that as much of the act it repealed as made persons having conscientious scruples as to capital punishment competent jurors in capital cases should no longer be the law, but that juries composed as they were required to be before that act should have the right to fix the punishment. *Expressio unius exclusio alterius.* We had regarded this question as settled by our former decisions. *Russell* v. *State*, 53 Miss. 367 ; *Fortenberry* v. *State*, 55 Miss. 403 ; *Jones* v. *State*, 57 Miss. 684; *Smith* v. *State*, 58 Miss. 867 ; but at the earnest request of counsel have re-examined it, and are confirmed in our former view of it. There was no error in the action of the Circuit Court in rejecting as jurors those persons who answered that they had conscientious scruples as to the infliction of capital punishment.

The judgment must be reversed, because of the second instruction given at the instance of the State. It limits and qualifies the right of the jury to fix the punishment at imprisonment for life, whereas the law confers on the jury this right without qualification or restriction. The right of the jury to fix the punishment as indicated is without any condition. The most atrocious crime committed under the most aggravating circumstances may be punished by imprisonment for life, instead of by death, if the jury so determines by its verdict. The law demands a jury willing to be the instrument of visiting the penalty of death, and confers on such a jury the unconditional right to fix the punishment at imprisonment for life. It was erroneous to instruct the jury that its right was dependent on any state of the evidence or on any view it might take of it. The jury found the prisoner guilty, and he was sentenced

to death.   The record shows that the jury recommended the prisoner to the mercy of the court, in connection with the announcement of a verdict of guilty, and that the court on that announcement directed the jury to retire and bring in a verdict in accordance with the second instruction for the State. It seems highly probable that, but for this instruction, which made the right of the jury to fix the punishment to depend on its view that the evidence warranted it, the jury would have exercised its right to fix the punishment at imprisonment for life.   But, independently of this, the error in the instruction requires a reversal of the judgment.

We have considered the question of the right of this court to pronounce a judgment imprisoning the prisoner for life on the verdict of guilty, and have resolved it in the negative. The error found in the record is not in the judgment rendered on the verdict, but consists in the action of the court preceding the verdict, and which may have produced a verdict different from that which might have been rendered if the instruction had been correct.   Imprisonment for life is to be part of the verdict, and we cannot alter the verdict.   We may pronounce such judgment as the court below should have rendered, where that is apparent, but in this case the Circuit Court rendered the only judgment proper to be rendered on the verdict given.   As the judgment must be reversed for an error in the trial preceding the verdict and conducting to it, a new trial must be granted, and the cause be remanded for that purpose.                              *Ordered accordingly.*