BOROWITZ v. STATE.

[75 South. 761, In Banc.]

JURY. *Exclusion from jury of conscientious objectors to capital punish-
ment. Statutes.*

   In a prosecution for murder it is proper for the court to exclude
   from the jury persons who state that they have conscientious
   scruples against the infliction of capital punishment, since sec-
   tions 1229 and 1512, Code 1906, providing the method of fixing
   the punishment in such cases, do not deal with and have no
   bearing on the qualifications of jurors.

APPEAL from the circuit court of Washington county.
HON. F. E. EVERETT, Judge.

Blackie Borowitz alias Ed. Cameron, was convicted of
murder and appeals.

The facts are fully stated in the opinion of the court.

*Clayton D. Potter* and *A. A. Chaney,* for appellant.

*Frank Roberson,* Assistant Attorney-General, for the
State.                              .

SMITH, C. J., delivered the opinion of the court.

The court below committed no error in excluding from
the jury certain persons who stated they had conscientious
scruples against the infliction of capital punishment. *Rus-
sell* v. *State,* 53 Miss. 367; *Fortenberry* v. *State,* 55 Miss.
403; *Smith* v. *State,* 58 Miss. 867; *Spain* v. *State,* 59
Miss. 19; and *Cooper* v. *State,* 59 Miss. 264. These
cases were decided under sections 2877 and 3083 of the
Code of 1880, which are as follows:

"2877. Every person who shall be convicted of mur-
der shall suffer death, unless the jury rendering the ver-
dict shall fix the punishment at imprisonment in the peni-
tentiary for the life of the convict."

"3083.    In any case in which the penalty prescribed by law, upon the conviction of the accused, is death, the jury finding a verdict of guilty, may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly; but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death."

The only change in this connection made in either of these statutes as they now appear as sections 1229 and 1512, Code 1906, are, that at the end of the first is added the following:

"Or unless the jury shall certify its disagreement as to the punishment as provided by section 1512, in which case the court shall fix the punishment at imprisonment for life."

And at the end of the second, the following:

"Unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life."

These amendments do not deal with and have no bearing on the qualifications of jurors, but, as is well known, were adopted to prevent the mistrials that not infrequently resulted in cases wherein the jurors agreed on the guilt of the accused, but were unable to return a verdict because they disagreed on the punishment to be inflicted, and some of them were unwilling to certify such disagreement to the court, for the reason that a verdict so returned would be followed by the death penalty.    In the language of CAMPBELL, J., in *Spain* v. *State, supra:*

"The law permits either of two verdicts, viz., a verdict of guilty, to be followed by a sentence of death, and a verdict of guilty, with imprisonment in the penitentiary for life.    If the state must accept jurors whose scruples of conscience as to capital punishment will preclude them from consenting to a verdict of guilty to be followed by

the death penalty, it thereby abandons in advance one of the two verdicts allowable in such cases.

"It is not correct to say that the state is indifferent as to which of the two verdicts may be given. It has denounced the penalty of death against murder; it permits the jury to say that another penalty shall be substituted for that prescribed by law as the appropriate one. To give the accused the right to have jurors who will not consent to the penalty of death is to preclude the punishment the law has affixed, and to make the law itself an instrument to defeat its own execution."

There is no merit in any of the assignments of error.

Affirmed, and Friday, the 10th day of August next, fixed as the day for the execution of sentence.

*Affirmed.*

ETHRIDGE, J. (specially concurring). Inasmuch as the majority opinion does not state the facts, I deem it proper to make a brief statement of facts in order that my views may be understood.

Blackie Borowitz, alias Ed Cameron, and two others, were indicted in the circuit court of Warren county at the December term, 1916, for the murder of Chas. H. Stites, and Borowitz was placed upon trial at the same term of the court, convicted as charged in the indictment, and sentenced to suffer death, and prosecutes this appeal. The killing occurred on the night of November 3, 1916, on an alleyway back of the Valley Dry Goods stores. The deceased was captain of police, and the killing occurred at night, and there was only one person that claimed to have witnessed the killing. This witness, Walter Tucker, was a negro, claimed that he had a room directly across the street from where the killing occurred, and he identified Borowitz as one of the parties engaged in the shooting. The appellant was arrested on the night of the killing some three or four blocks from where the killing occurred, and was carried to the sanitorium where Captain Stites had

been carried to see if he could identify him, but Captain Stites failed to identify him, stating that it was dark, and that he could not recognize the man.  Captain Stites did not make any dying statement, and outside of the negro witness' testimony the evidence was largely circumstantial, but there was proof in addition to this direct evidence of the negro Tucker of a confession to a fellow prisoner on the part of Borowitz, and there was abundant . proof to show that the appellant was one of the parties engaged in the killing.  The appellant did not testify in his own behalf, and there is no testimony on the part of the defendant that suggests that he was innocent or to raise a reasonable doubt as to his guilt on the facts.

The principal assignments of error for reversal pertain to the impaneling of jurors and the exclusion of certain parties from the jury, and as to questions propounded to prospective jurors bearing on qualifications on account of conscientious scruples against capital punishment.  It appears that the court excluded certain jurors who had some hesitancy about inflicting capital punishment, and also the court held certain jurors qualified who expressed they had an opinion of the guilt or innocence of the accused that would take testimony to remove, but that the jurors were fair and impartial, and would try the case according to the law and the evidence.  The appellant challenged some of the jurors who had such opinion for cause, and the challenge for cause was overruled, and the appellant challenged such jurors peremptorily, and during the impaneling of the jury exhausted all of his peremptory challenges.  When the final jury that tried the case was tendered to the defendant, defendant, through his attorney, announced that "the defendant is satisfied with the jury."  It is argued here that having exhausted his peremptory challenges, and being forced to exercise peremptory challenge on jurors expressing opinion, the defendant is entitled to raise the question as to whether the court was correct in overruling

challenge to such jurors for cause. It is also insisted here that the court stood aside arbitrarily all jurors who expressed any reluctance or hesitancy in inflicting capital punishment, and that the practice of the court was tantamount to making the jurors covenant that they would hang appellant in case he was found guilty. The object of the law in giving rights of challenge, both for peremptory and for cause, is to secure a fair and impartial jury; and when the jury which tried the case was tendered to the appellant and he requested no further right of challenge, either for cause or peremptory, but announced that he was satisfied with the jury, I think we must hold that the jury was fair and impartial, especially as there is nothing in the record to show that any of the jurors were not fair and impartial who actually tried the case. I do not see how any other verdict but guilty could be rendered in the case; and objections to jurors stood aside by the court or to which the appellant's challenge for cause was overruled, is not entertainable on the record in this case. Prior to the adoption of the Code of 1906 the statutes of this state inflicted the death penalty in cases of verdicts of guilty in murder cases unless the entire jury concurred in inflicting the punishment of imprisonment for life, but with the adoption of the Code of 1906, this section was changed so that now if the jury agree on guilt, but do not agree on the punishment to be inflicted, the punishment fixed by law is life imprisonment, and under this amended statute the question might be presented as to whether a juror was competent who had conscientious scruples against the infliction of capital punishment, and as to whether the court was right, or committed error, in sustaining the state's challenge for cause to all jurors who might have such conscientious scruples or who might have scruples against the infliction of the death penalty in a murder case. There are some authorities holding that under such statutes scruples against the death penalty is not a cause for challenge,

while other authorities hold that such scruples, notwith-
standing a statute like ours, is the cause of challenge.  I
do not think the record in this case properly presents
this question for decision, and that it is unnecessary to
decide it.

As the court has decided this proposition in the majori-
ty opinion, I deem it proper to say that in my view the
authorities cited in the majority opinion have absolutely
no bearing on the construction of the present statute.
Under the former statute it required a concurring judg-
ment and vote of all the jurors to reduce the punishment
from a death sentence to one of life imprisonment, and in
such case one juror unwilling to inflict death would either
have to violate his conscience or withhold his verdict.
Under the former statute a single juror, in case all the
jury believed the defendant was guilty, could enforce the
death penalty by refusing to consent to a life sentence.
Under the present statute it takes the concurring judg-
ment of twelve jurors to inflict the death penalty, and a
single juror can prevent the infliction of capital punish-
ment, but the verdict of guilty may be returned stating
that the jury cannot agree on the punishment.  While
the amendment in the Code of 1906 does not radically
change the verbiage of the statute, it does radically
change the legal effect of the statute.  As these sections
of the Code of 1906 are not set out in the majority opin-
ion in full.  I set them out here for the purpose of com-
parison with the statutes under the authorities quoted in
the majority opinion as follows, to wit:

"1229.  The Same;    The Penalty for Murder.  Every
person who shall be convicted of murder shall suffer
death, unless the jury rendering the verdict shall fix the
punishment at imprisonment in the penitentiary for the
life of the convict; or unless the jury shall certify its dis-
agreement as to the punishment as provided by section
1512, in which case the court shall fix the punishment at
imprisonment for life."   ·

"1512.   Sentence upon Conviction;   In Capital Cases, Power of the Jury, etc.—In any case in which the penalty prescribed by law upon the conviction of the accused is death, except in cases otherwise provided, the jury finding a verdict of guilty may fix the punishment at imprisonment for the natural life of the party; and thereupon the court shall sentence him accordingly, but if the jury shall not thus prescribe the punishment, the court shall sentence the party found guilty to suffer death, unless the jury by its verdict certify that it was unable to agree upon the punishment, in which case the court shall sentence the accused to imprisonment in the penitentiary for life."

In the case of *Spain* v. *State,* 59 Miss. 19, the court held that the question of the jury's right to inflict life imprisonment rather than the death penalty was in no sense controlled by the heinousness of the crime or of the strength of the evidence.   The legal object in all of the statutes giving the jury right to inflict the punishment was not for the purpose of measuring the punishment to the facts shown in evidence, but to satisfy the juror's conscience and to make more certain the proper administration of law in punishing crime.   I challenge the statement in the majority opinion:

"These amendments do not deal with, and have no bearing on, the qualification of the jurors, but, as is well know, were adopted to 'prevent the mistrials that not infrequently resulted in cases wherein the jurors agreed on the guilt of the accused, but were unable to return a verdict because they disagreed on the punishment to be inflicted."

Under the former law no juror who had any conscientious scruples against the infliction of the death penalty could sit on the jury at all unless he perjured himself.   If he agreed to guilt and was unwilling to return a verdict he stood as a self-confessed perjurer not only before the twelve jurors, who had taken the same oath that

he had taken, but before all men who should come to know of his refusal to abide by his oath.   The real purpose of . adopting the amendment, as shown in the history of the statute, was to make competent as jurors that great and growing body of men who stood for law and order and for peace and right, but who shrank from the responsibility of taking that which God only could give.   These men could not serve on juries in capital cases because on their consciences they felt like they could not assume responsibility for taking from man that which could not be returned to him in the case of mistake.   They number amongst the best citizenship of the state, and in some communities this conscientious sentiment was so strong and formidable as to make it difficult to enforce. the law in murder cases.   It is well known of all men conversant with criminal trials that in each county there are a considerable number of people who are always ready to acquit men charged with murder, unless there is a strong popular sentiment against the individuals charged, and these men generally qualify, and would qualify under any test that could be devised by the wits of man.

I have found no statute in my limited search quite as liberal as our own on this subject, but I have found authorities that hold that where the jury have a right to fix the penalty at less than life imprisonment that they are not subject to challenge for cause because of conscientious scruples.   In the case of *State* v. *Garrington,* 11 S. D. 178, 76 N. W. 326, the supreme court of South Dakota construed section 6449 of the Code of that state (Comp. Laws Dak. 1887), which reads as follows:

"Every person convicted of murder shall suffer death or imprisonment at hard labor in the   .   .   .   penitentiary for life, in the discretion of the jury. Upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death" or life imprisonment, etc.

The court held under this statute that to sustain a challenge for cause because of conscientious scruples was error, although section 7359 of the Code of that state provided for challenge for cause for cases where the punishment was death, if the juror entertained conscientious scruples which would preclude his finding the defendant guilty. The court of Iowa in *State* v. *Lee,* 91 Iowa, 499, 60 N. W. 119, held under a similar statute that it was error to sustain a challenge for cause. To the same effect are *State* v. *Dooley,* 89 Iowa, 584, 57 N. W. 414; *People* v. *Stewart,* 7 Cal. 140; *Atkins* v. *State,* 16 Ark. 568. In our state we have no statute providing that conscientious scruples against the infliction of the death punishment is a disqualification, but the disqualification from this cause, heretofore recognized, grew out of the fact that the verdict of guilty in a murder case would be followed by death unless the whole jury fixed the punishment at less than death. It is a principle as old as English common law that where the reason of a rule ceases the rule itself ceases, and there is under the present statute no reason why a juror should not return a verdict of guilt, even though he entertains scruples against the death penalty. The state representing the whole people of Mississippi does not clamor for any man's life, but is satisfied in case of guilt with a life sentence for the prisoner. To present the question in this kind of case for decision I think where the peremptory challenges are exhausted and the defendant desires further challenge, or is not satisfied with the jury, that he should present his objections to the court, and if the court denies him further right, to take exception. There was no exception taken in the present case, and in addition the defendant announced that he was satisfied with the jury which finally tried him.