Gerald Henry IRVING, Jr., Appellant,

v.

C. E. BREAZEALE, Superintendent of Mississippi State Penitentiary, et al., Appellees.

No. 24606.

United States Court of Appeals Fifth Circuit.

Aug. 27, 1968.

Ebb J. Ford, Jr., Gulfport, Miss., for appellant.

Boyce Holleman, Gulfport, Miss., Guy N. Rogers, Asst. Atty. Gen., Jackson, Miss., for appellees.

Before GEWIN and COLEMAN, Circuit Judges, and HUGHES, District Judge.

GEWIN, Circuit Judge:

After a trial by jury, Appellant was convicted of murder in the Circuit Court of Harrison County, Mississippi, and sentenced to die in the gas chamber. Having exhausted all state remedies,[1] he filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Mississippi, asserting that his conviction was obtained in violation of his fifth, sixth, and fourteenth amendment rights. The district court denied the relief sought by Appellant's petition[2] and he perfected an appeal to this court. We affirm the district Court's denial of the petitioned relief. However, we stay the execution of the death sentence pending a determination of the issues raised by the Supreme Court's recent Witherspoon v. State of Illinois decision.[3]

The record before this court is comprised of the record of the proceedings in the criminal trial in the state court and the record of the habeas corpus proceeding in the district court. Appel-

---

1. Appellant's conviction was affirmed by the Mississippi Supreme Court, Irving v. State, 192 So.2d 686 (Miss.Sup.Ct.1966), and his petition for a writ of error coram nobis was denied. Irving v. State, 194 So.2d 239 (Miss.Sup.Ct.1967).

2. Irving v. Breazeale, 265 F.Supp. 116 (S.D.Miss.1967).

3. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (U.S. June 3, 1968).

lant neither testified himself nor offered any other evidence in the criminal trial. And even though the district court granted him a full plenary hearing in response to his habeas corpus petition,[4] Appellant declined to testify as to the facts alleged in his petition.[5] He offered in evidence the two-volume record of the criminal trial and called four individuals whose testimony added nothing of substance which had not been brought out during the criminal trial.

After a careful and thorough examination of the entire record before this court,[6] we find that the uncontradicted and unimpeached evidence establishes the following facts relevant to Appellant's contentions.

At the time of his arrest, Appellant was twenty-two years of age and had an eleventh-grade high school education. He has proceeded through the courts in forma pauperis, counsel having been appointed for him on February 17, 1966, at the time of his indictment by the Harrison County Grand Jury. The crime of which Appellant was subsequently convicted was committed sometime in the early morning hours of Friday, November the 19th, 1965, in the city of Biloxi, Mississippi.[7] The next day police officers went to Appellant's place of employment to question him concerning the crime. Appellant fled when he saw the officers, but he was apprehended within a very short time and taken to the Biloxi police station. He was advised at the station of his right to counsel, but he stated that he did not believe that he needed a lawyer at the time. Almost immediately he confessed to having committed a burglary in the city,[8] and he was then officially arrested and charged with that crime. Later during the same day he was visited by relatives who brought him a change of clothing.

Appellant remained in the Biloxi jail the rest of Saturday, the 20th, all day Sunday, the 21st, and part of Monday, the 22nd, during which time he was interrogated a "very short period of time" concerning the murder. After police officers broached the subject, Appellant volunteered to take a polygraph test. Since the local police department was not equipped to administer a polygraph examination, Appellant was taken, with his permission, to Jackson, Mississippi, at about eight o'clock on Monday morning. Before the examination was given,[9] a Biloxi detective who had known Appellant for some years interrogated him concerning the murder. The Appellant had evidenced a desire to talk with the detective. The detective testified that he advised Appellant

4. The state trial court did not indicate the constitutional criteria it applied in finding the challenged evidence admissible; accordingly, the district court ordered a full plenary hearing on the habeas corpus petition. Townsend v. Sain, 372 U.S. 293, 312–313, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

5. The district judge virtually solicited Appellant's testimony and reminded his counsel that the inquiry was not whether Appellant was guilty or innocent but only whether his constitutional rights had been infringed. In response, his counsel stated that the facts upon which the petition rested were already admitted in the record and that Appellant could not improve upon the testimony already given.

6. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

7. The victim of the crime was Mrs. Hazel K. Nixon, a sixty-nine-year-old widow. Her body was found partially clad and riddled with stab wounds in a hallway between the dining room and bedroom of her home. She had been raped and a purse containing a small amount of money had been stolen.

8. The other crime was not identified during the criminal trial but was established as burglary during the habeas corpus proceeding. A number of burglaries had been committed in the city and a John Doe warrant had been issued.

9. It is not clear from the record whether the polygraph test was ever given. The probabilities are that it was not, since Appellant's subsequent confession mooted the value of it.

of his constitutional rights before questioning him:

> I advised him that he didn't have to say anything unless he wanted to, that anything he said could be used in a court of law, and that he had a right to legal counsel, and that I could not promise him anything. * * *

After a few preliminaries,[10] Appellant voluntarily made a full and complete confession of the crime. He was thereupon charged with murder.[11] The police officers then returned with Appellant to Biloxi, arriving about 7:30 p. m., where they went directly to the scene of the crime. There Appellant took the officers on a walking tour from the scene, showing them where he had hidden the murder weapon and a purse taken from the victim's house. At about 9:30 p. m. after recovering the lethal knife and the purse, Appellant was taken before a justice of the peace for a preliminary hearing on the murder charge.

During the criminal trial, Appellant's oral confession, as well as the knife and purse obtained through the confession,

were admitted in evidence over his timely objection. Appellant contends that the admission of this evidence was fatal error,[12] violative of his fifth, sixth, and fourteenth amendment rights.

█ Appellant's first contention is that his confession, when viewed in the totality of the circumstances, was extracted by coercion in violation of his fifth and fourteenth amendment rights. In support of this contention, Appellant cites and quotes extensively from Payne v. State of Arkansas.[13] However, the harsh and rampant disregard of the rights of the accused in that case finds no parallel in the present case. The Court in *Payne* listed the salient facts from the evidence, the totality of which clearly amounted to coercion.[14] We do not intend to intimate that the evidence must mirror the extreme facts of the *Payne* case before coercion will be found, but none of the facts there found is present in the instant case. The *Payne* rationale is a practical recognition of the fact that, while any isolated infringement may be completely innocuous, the aggre-

---

10. The detective testified:
First I asked him * * * if he wanted to talk to me and he said he did, and I asked him if it was in reference to this crime [of murder], and he said it was, and I told him to tell me just what happened. * * *

11. The detective testified that Appellant was then "arrested" on the murder charge. However, Appellant was already under arrest on the burglary charge and he had never been released.

12. Under Point One of his brief, Appellant cites Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); and Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), to establish the principle that, where a constitutional infringement has resulted from the admission of evidence, a judgment of conviction must be overturned unless the reviewing court is satisfied beyond a reasonable doubt that the error did not contribute to the verdict.

13. 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).

14. The facts upon which the *Payne* decision rested were stated succinctly by the Supreme Court:

> The undisputed evidence in this case shows that petitioner, a mentally dull 19-year-old youth, (1) was arrested without a warrant, (2) was denied a hearing before a magistrate at which he would have been advised of his right to remain silent and of his right to counsel as required by Arkansas statutes, (3) was not advised of his right to remain silent or of his right to counsel, (4) was held incommunicado for three days, without counsel, advisor or friend, and though members of his family tried to see him they were turned away, and he was refused permission to make even one telephone call, (5) was denied food for long periods, and, finally, (6) was told by the chief of police "that there would be 30 or 40 people there in a few minutes that wanted to get him," which statement created such fear in petitioner as immediately produced the "confession."

gation of transgressions may totally undermine the voluntariness of an accused's actions. The initial requisite, therefore, is that there be instances of infringement. Appellant's contention must fall for the simple reason that no infringement appears in this record.

█ Appellant's other contentions are that his fifth, sixth, and fourteenth amendment rights were violated in that he was not accorded the right to remain silent and the right to counsel at a critical stage in the criminal process. There is no question that at the time of Appellant's confession, if not before, the accusatory finger has been pointed at him and he was, therefore, at a critical stage of the process.[15] In support of his contention that he was not adequately accorded his right to counsel, Appellant cites and quotes from Elsperman v. Wainwright,[16] where this court stated:

> [I]t is not enough for the trial Court to ask an indigent defendant merely whether he desires counsel: the Court must affirmatively inform the defendant that it has a duty to appoint counsel for him if he so desires.

The rationale of this rule is clear. An accused cannot be found to have waived a right if he was not aware that he had it. Thus it is not sufficient merely to ask an indigent defendant whether he wants a lawyer. If he is unaware that counsel will be appointed whether he can afford to pay or not, he will not likely say that he wants a lawyer even if he thinks he needs one.

█ However, the *Elsperman* case did not establish a procrustean verbal formula. It requires only that the accused be informed that he has an absolute right to counsel. This requirement can ordinarily be satisfied by an unequivocal statement, without subjunctive over-

tones, that the accused has a right to counsel. Further elaboration is unnecessary to convey the idea except, e. g., where the indigent is a youth or a dull adult or where he indicates that he does not understand that his right to counsel is unqualified. In such circumstances, the indigent will not have been adequately informed of his right until it is made clear to him that counsel will be appointed for him.

█ In the present case, Appellant is neither a youth nor a dull adult; nor is there any indication that he did not understand that his right to counsel was unqualified. The record before this court is barren of any evidence that Appellant was not informed of his right to counsel or that he did not understand what he was told. We therefore agree with the finding of the district court that Appellant's sixth amendment rights were not infringed.

█ Appellant's contention that he was not accorded his fifth amendment right to remain silent rests upon the assumption that, when the accused reaches a critical stage in the criminal process, he does not have a right to speak even if he so desires. The assumption is unfounded in the law, Even under the strict guidelines laid down by the Supreme Court in Miranda v. State of Arizona,[17] which is inapplicable to the present case,[18] Appellant's contention would fall. In *Miranda,* the Court stated:

> He [the accused] must be warned prior to any questioning that he has the right to remain silent, [and] that anything he says can be used against him in a court of law * * *. After such warnings have been given, * * the individual may knowingly and intelligently waive these rights and

---

15. Escobedo v. State of Illinois, 378 U.S. 478, 490–491, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

16. 358 F.2d 259 (5th Cir. 1966) (per curiam).

17. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

18. The trial in the case *subjudice* was held prior to the decision in *Miranda,* which is prospective only in application. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

agree to answer questions or make a statement.[19]

The record here clearly shows that Appellant was apprised of his right to remain silent and that he knowingly and intelligently waived that right.

■ The petitioner in a habeas corpus proceeding has the burden of proof to establish facts sufficient to warrant a finding that his constitutional rights have been infringed.[20] Appellant has not carried that burden. Accordingly, we affirm the district court's denial of the relief sought in Appellant's habeas corpus petition.

■■ Subsequent to the decision of the district court, the Supreme Court announced its opinion in Witherspoon v. State of Illinois.[21] In that case, the Court held that

a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.

The Witherspoon decision does not, however, proscribe the exclusion of a venireman who states unequivocally that he would never impose the death penalty or that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt. In addition, the Court made clear that the exclusion of jurors in violation of Witherspoon does not invalidate the conviction, but only the death sentence.[22]

■ The jury selection proceedings are not included in the record of the criminal trial of this case. We therefore have no way of knowing whether any juror or jurors were excluded because they expressed conscientious scruples against the death penalty. We take judicial notice, however, that the law of Mississippi requires the trial court in a capital case to exclude all persons who have such scruples.[23] Therefore, this case must be remanded for a determination of the Witherspoon issue. In the interest of state-federal judicial relations, we think that comity requires that this issue be resolved by the state courts if an adequate state remedy is available.[24] We have recently approved such procedure in several cases.[25] Accordingly, the case is remanded with directions that the district court enter such orders as are appropriate to allow the state courts to determine whether the principles of the Witherspoon decision were violated. Needless to say, we cannot predict the outcome of such a hearing. In any event, the execution of the death sentence is stayed pending a final determination of the Witherspoon question

19. 384 U.S. at 479, 86 S.Ct. at 1630.

20. Tyler v. Beto, 391 F.2d 993, 995 (5th Cir. 1968); Labat v. Bennett, 365 F.2d 698, 712 (5th Cir. 1966); Scott v. Walker, 358 F.2d 561, 571 (5th Cir. 1966).

21. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776 (U.S. June 3, 1968).

22. See Bumper v. State of North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (U.S. June 3, 1968). Although Witherspoon does not touch upon the legality of detention as such, we hold that this constitutional question is a proper one for consideration on habeas corpus. Cf. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (May 20, 1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (U.S. May 20, 1968).

23. Shimniok v. State, 197 Miss. 179, 19 So. 2d 760 (1944); Borowitz v. State, 115 Miss. 47, 75 So. 761 (1917).

24. Mississippi's coram nobis statute, Miss. Code Ann. § 1992.5 (1956), apparently provides an adequate procedure for determining the Witherspoon question. See 37 Miss.L.J. 9, 22–24 (1965). Of course, if the Mississippi courts do not provide adequate relief, Appellant can return to the federal courts. Peters v. Rutledge, 5th Cir. 1968, 397 F.2d 731 [No. 25075].

25. See Peters v. Rutledge, 5th Cir. 1968, 397 F.2d 731 [No. 25075]; Moore v. Dutton, 5th Cir. 1968, 396 F.2d 782; State of Texas v. Payton, 390 F.2d 261 (5th Cir. 1968); Brent v. White, 5th Cir. 1968, 398 F.2d 503; Powers v. Hauck, 5th Cir. 1968, 399 F.2d 322.

in the state courts, and we retain jurisdiction to the extent necessary to make the stay of execution effective, provided that Appellant immediately files and diligently prosecutes the issues here involved to a prompt conclusion.[26]  In view of all of the foregoing, we approve the rulings of the district court with respect to the matters presented to and considered by it, but the case is necessarily remanded for resolution of the *Witherspoon* issue.

Remanded with directions.

---

26. Clarke v. Grimes, 374 F.2d 550, 557 (5th Cir. 1967); Whitney v. Wainwright, 339 F.2d 275, 276 (5th Cir. 1964); Brent v. White, supra.