The People of the State of New York, Respondent, *v.* Joseph Swift, Appellant.

Second Department, June 2, 1969.

*James J. McDonough* and *Matthew Muraskin* for appellant.

*William Cahn, District Attorney (Jules E. Orenstein* of counsel), for respondent.

Hopkins, J.  The defendant was indicted for robbery in the first degree, grand larceny in the second degree, and possession of a weapon as a felony.  A hearing under the statute (Code Crim. Pro., part VI, tit. II-C) was held concerning the admissibility of certain statements made by him after his arrest.  The court found the statements admissible.  Thereafter the defendant pleaded guilty to robbery in the third degree in satisfaction of the indictment and was sentenced.

The single issue raised by the defendant is whether he was accorded his rights under *Miranda* v. *Arizona* (384 U. S. 436) and knowingly waived them before making the statements found admissible.  Hence we review the testimony at the hearing.

Patrolman John Mallon of the Long Beach Police Department testified that while on duty on December 15, 1967, at about 10:20 p.m., he saw the lights illuminating Waldbaum's Supermarket, but did not see any employees within.  Entering the store, he saw

the defendant standing near the door to a storage area. The defendant disappeared from view. The officer drew his revolver and discovered the defendant hiding behind some boxes. The officer searched the defendant and found on his person a starter's pistol, nylon stockings and gloves. The defendant had been accompanied by another man who assisted him in herding the employees of the store into a room and blocking the entrance by a fork-lift truck prior to the coming of the patrolman.

Henry Klejmont, a detective, testified that he saw the defendant first at the supermarket and then at police headquarters. Before questioning the defendant, he advised him orally of his rights in the following language:

" I told him that he had a right to counsel, to an attorney; that one would be present if he so desired; that he did not need to talk to me if he didn't want to; if he wanted to and wanted to have a lawyer present he could. * * *

" I told him that anything he said may be held against him in any court.

" I asked him if he wished to waive his rights. That's almost all of it, but I don't recall all of it right now, sir. "

The detective also gave the defendant a paper upon which was written the following:

" POLICE DEPARTMENT
CITY OF LONG BEACH
NEW YORK
YOUR RIGHTS

" Joseph Swift

" Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

" WAIVER

" I have read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer. I under-

stand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me.''

The contents of the paper were read to the defendant by the detective; and the defendant read the paper as well. The defendant was asked whether he desired to waive his rights and he said that he did. He then signed his name below the waiver; and his signature was witnessed by Detective Klejmont. The defendant's statement was thereafter taken by the detective; and it is this statement which the defendant urges was erroneously held to be admissible at the hearing.[1]

First, the defendant assails the oral warnings spoken to him as incomplete, because he was not told that if he wanted counsel, but was unable to retain one, counsel would be assigned to him. Second, he asserts that the written warnings read to him and by him were defective, because he was not informed that he might have assigned counsel at police headquarters. The language to which he specifically objects is the following in the body of the writing: '' You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.''

The defendant contends that the waiver of his rights under these circumstances was ineffective, for he could not waive rights with which he was not acquainted. It is his submission that, without a knowing and understanding waiver, his statement could not be received in evidence against him and his conviction must fall.

The rule in *Miranda* describes the warnings which must be given to an accused before interrogation in the following terms (*Miranda* v. *Arizona,* 384 U. S. 436, 444, *supra*): '' Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.''

If the statement of the defendant had been made following the oral warnings of Detective Klejmont, it would have been inadmissible, for the detective's admonitions failed to inform the defendant that he was entitled to the assignment of counsel if he were indigent (*People* v. *Rodney P.* [*Anonymous*], 21 N Y 2d 1,

---

1. The defendant did not testify or attempt to introduce any evidence at the hearing.

3-4). " It is essential that each of the four warnings required by *Miranda* shall have been given prior to the time that a statement was made and that a finding to that effect shall have been made by the trier of the fact " (*People* v. *Raymond Q.* [*Anonymous*], 29 A D 2d 1053).

The oral warnings in this case, however, were supplemented by the written warnings read to the defendant by the detective, and then read by the defendant. By the written warnings the defendant was informed that (1) he had a right to remain silent, (2) anything he said could be used against him in court, (3) he had a right to talk to a lawyer before and during questioning, (4) he had a right to a lawyer's advice and presence even if he could not afford to hire one, (5) a lawyer would be appointed for him, if and when he went to court, and (6) he had a right to stop answering questions at any time until he talked to a lawyer. We think that these warnings met the standards prescribed by *Miranda*.

The defendant's complaint that the written warnings were incomplete because of the advice to him that the police could not provide him with a lawyer, but that one would be appointed for him by the court, has no substance. First, *Miranda* does not direct that the accused be furnished with counsel by the police. In its discussion of the right to counsel during the questioning of an indigent person, the opinion of Chief Justice WARREN is quite specific (*Miranda* v. *Arizona*, 384 U. S. 436, 473, *supra*): " In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he had the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him."

The opinion continues (p. 474): " This does not mean, as some have suggested, that each police station must have a ' station house lawyer ' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time."

Thus, it is made plain that if the police do not have counsel available to assist a person under interrogation who requests that assistance, they may not undertake questioning until he has obtained the presence of counsel. The defendant does not claim

that he requested counsel; and his questioning began after he had signed the waiver which clearly stated that he did not desire counsel.

Second, the written warnings were unequivocal in telling the defendant that he could have the benefit of counsel even if he were indigent and that he had the right to talk to a lawyer before he was questioned. The intent of *Miranda* is stretched unreasonably if we were to add to the requirements of the rule the command that the warnings must include a statement of the manner in which counsel will be assigned to the person interrogated. It is significant in this aspect of the consideration of *Miranda* that the defendant at the time of the hearing did not testify, so that no issue of confusion or misunderstanding of his right to counsel arises on this record.[2]

We think that the mandate of *Miranda* is satisfied when the fourfold warnings are imparted in a manner which would be understandable by the ordinary person — at least, in the absence of evidence that the person in custody did not understand them. The rule does not demand the mouthing of "a ritualistic formula" (cf. *United States* v. *Vanterpool*, 394 F. 2d 697, 698–699; *Irving* v. *Breazeale*, 400 F. 2d 231, 234).[3] Here the warnings complied with the rule, were in writing so that the defendant could read them as many times as he pleased, and the written waiver which he signed signified that he did not wish a lawyer and was willing to make a statement. Moreover, it is evident that his arrest literally in the act of robbery must have contributed heavily to his decision to make a statement within minutes of his apprehension. He could well come to the conclusion that a lawyer would be able to do little to assist him in his predicament.

---

2. We have assumed that the defendant was in fact indigent at the time of interrogation, although he has produced no evidence that he made that claim to the police (cf. *People* v. *Post,* 23 N Y 2d 157, 160). We have made that assumption because he has been represented by assigned counsel both here and in the County Court.

3. In *Irving* v. *Breazeale (supra),* the detective told the accused: "I advised him that he didn't have to say anything unless he wanted to, that anything he said could be used in a court of law, and that he had a right to legal counsel, and that I could not promise him anything" (p. 234). The Fifth Circuit Court of Appeals, in treating a claim that the warning did not inform the accused that he could have assigned counsel if he were indigent, said (p. 235): "However, the *Elsperman* case did not establish a procrustean verbal formula. It requires only that the accused be informed that he has an absolute right to counsel. This requirement can ordinarily be satisfied by an unequivocal statement, without subjunctive overtones, that the accused has a right to counsel. Further elaboration is unnecessary to convey the idea except, e.g., where the indigent is a youth or a dull adult or where he indicates that he does not understand that his right to counsel is unqualified".

The defendant suggests that, even if the written warnings were sufficient, the taint of the defective oral warnings infected them, since he could only be confused by the interaction of the two. This argument assumes that he was in fact confused—a fact which, as we said before, is without any foundation in this record. Nor do we see upon a comparison of the oral warnings with the written warnings that any conflict exists between them. The most that can be said is that the oral warnings leave out the advice to the defendant that he may have counsel appointed if he cannot afford to hire counsel. That is not in contradiction of what the detective also told the defendant, i.e., that "he [the defendant] had a right to counsel, to an attorney; that one would be present if he so desired." In short, the written warnings spelled out the right to counsel in greater detail and did not on their face dispute anything the defendant heard from the detective.

The judgment should be affirmed.

CHRIST, Acting P. J., BRENNAN, MUNDER and MARTUSCELLO, JJ., concur.

Judgment of the County Court, Nassau County, rendered September 11, 1968, affirmed.