United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 24, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-41566
Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

URI SALIM BENAVIDES-HERNANDEZ,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:04-CR-234-1

---

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Uri Salim Benavides-Hernandez ("Benavides") appeals the

sentence imposed following his guilty-plea conviction for

possession with intent to distribute more than 500 grams of

cocaine and using and carrying a firearm during a drug

trafficking offense.  Benavides argues that the district court

erred by enhancing his sentence based upon his February 22, 2000,

and March 27, 2000, guilty-plea convictions for illegal entry

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

because those convictions were obtained in violation of his Sixth Amendment right to counsel.  Prior to sentencing, Benavides filed objections to the presentence report (PSR), claiming that his three earlier convictions—the two 2000 illegal entry convictions and a 2001 illegal entry conviction—were based on uncounseled guilty pleas that are invalid because he did not knowingly and intelligently waive his right to counsel.  For the purposes of this appeal, we assume without deciding that Benavides had the right to collaterally attack his prior convictions at the sentencing phase of this conviction.[1]  The defendant who

---

[1]Application Note 6 to Section 4A1.2 of the Sentencing Guidelines provides, inter alia: " With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (*e.g.*, 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions)." U.S.S.G. § 4A1.2, comment., n. 6.  The Supreme Court in *Custis v. United States*, 114 S.Ct. 1732 (1994), addressed a collateral attack of a prior conviction during sentencing under the Armed Career Criminal Act (ACCA) and found that an attack based on a claim of ineffective assistance of counsel and a claim that the guilty plea was not knowingly and intelligently made was not permitted by the statute.  The Court did, however, note "that failure to appoint counsel for an indigent defendant was a unique constitutional defect," *id.* at 1738, and recognized that this was an exception for which a collateral attack would be allowed under the ACCA.  While not directly addressing sentencing under the Sentencing Guidelines, the *Custis* opinion lends support to an argument that the right to make a collateral attack on these grounds is one that is "otherwise recognized in law."  In *United States v. Toliver*, 50 F.3d 1034, No. 94-40978 (5th Cir. March 17, 1995) (unpublished; see Fifth Circuit Rule 47.5.3) we held that at sentencing under the guidelines use of a prior guilty plea based conviction (which had not previously been set aside) could not be challenged on the basis that the plea was invalid because the defendant was not advised of the elements of the offense and

collaterally attacks a conviction bears the burden of proof, even if the attack rests on constitutional grounds. *Parke v. Raley*, 113 S.Ct. 517, 524 (1992). In addition, "in a collateral attack on an uncounseled conviction, it is the defendant's burden to prove that he did not competently and intelligently waive his right to assistance of counsel." *Iowa v. Tovar*, 124 S.Ct. 1379, 1390 (2004).

The district court overruled Benavides's objections to the PSR, finding that Benavides was represent by counsel in the 2001 case and that Benavides validly waived his right to an attorney in both of the 2000 cases. On appeal, Benavides argues that the waiver form he signed implied that the right to counsel did not exist unless the defendant went to trial. While the form may

---

would not have pled guilty if he had been; in so holding we noted that although *Custis* dealt with sentencing under the ACCA, the "broader constitutional ruling in *Custis* is equally applicable to sentencing enhancements under the Guidelines as well." On the other hand, there are approved procedures for bringing a collateral on these grounds. The Court in *Custis* also noted that "the failure to appoint counsel for an indigent defendant in a federal proceeding . . . was subject to collateral attack in federal habeas corpus." *Id.* at 1737 (citing *Johnson v. Zerbst*, 58 S.Ct. 1019 (1938)). Moreover, if, as in this case, the defendant is not in custody and so the writ of habeas corpus is not available, another recognized method for collaterally attacking a conviction based on a failure to appoint counsel and no effective waiver of this right by the defendant is through the writ of error coram nobis. *See United States v. Morgan*, 74 S.Ct. 247 (1954); *see also United States v. Canales*, 960 F.2d 13111, 1316 (describing a defendant's remedies, "other than the sentencing proceeding through which to attack the prior conviction").

arguably make this erroneous implication,[2] any possible misunderstanding on the part of Benavides was addressed and cured by the magistrate judge during the plea colloquy in each case. Benavides has not met his collateral-attack burden of showing that his waiver of counsel prior to the February conviction was not competent and intelligent. Moreover, for the February conviction, Benavides received a stand-alone sentence of probation and so the right to counsel did not apply. *See United States v. Perez-Macias*, 335 F.3d 421, 428 (5th Cir. 2003); *United States v. Rios-Cruz*, 376 F.3d 303, 304–05 (5th Cir. 2004). As Benavides concedes, under *Perez-Macias* and *Rios-Cruz*, his argument regarding the February conviction is foreclosed.

Benavides was sentenced to 45 days of imprisonment for the March 27, 2000, conviction and the Sixth Amendment right to counsel did apply. *See Alabama v. Shelton*, 535 U.S. 654, 661–62 (2002). In addition to challenging the waiver form, Benavides points out that, during his March 27, 2000, plea colloquy, while the magistrate judge informed Benavides that he had the right to

---

[2]The form in question is the "Consent To Be Tried By A United States Magistrate," and the specific clause identified by Benavides as implying that his right to counsel is only in the event of trial provides: "Having waived my right to trial before a District Judge and after having these rights fully explained to me, I hereby *also waive my right to counsel or the assignment of counsel*, since there will be no trial." (emphasis added). Although Benavides has only limited English, this form is printed in both English and Spanish on a single page. In the present and all relevant prior court proceedings a Spanish language interpreter was used throughout.

4

counsel, the magistrate judge did *not* expressly inform Benavides that he had the right to court-appointed counsel if he could not afford an attorney.[3] Benavides summary of the March 27 plea colloquy is correct, but Benavides did not provide evidence or make an offer of proof that he did not know he had a right to

---

[3]In support of his argument on this issue, Benavides cites to our holding in *Elsperman v. Wainwright*, 358 F.2d 259 (5th Cir. 1966), where we stated that "it is not enough for the trial Court to ask an indigent defendant merely whether he desires counsel: the Court must affirmatively inform the defendant that it has a duty to appoint counsel for him if he so desires." *Id*. at 260. This language is dicta. *Elsperman*'s holding is that the habeas petitioner was entitled to a *hearing* on his "positive allegations" that in his challenged conviction (when he was indigent and unable to employ counsel) "his requests for court-appointed counsel were denied by the trial court" and that "the State Court minutes, which do not purport to be a transcript of the proceedings" indicating the contrary could be challenged at such a hearing. Two years later, in *Irving v. Breazeale*, 400 F.2d 231 (5th Cir. 1968), we noted that "the *Elsperman* case did not establish a procrustean verbal formula. It requires only that the accused be informed that he has an absolute right to counsel. This requirement can ordinarily be satisfied by an unequivocal statement, without subjunctive overtones, that the accused has a right to counsel. Further elaboration in unnecessary to convey the idea except, e.g., where the indigent is a youth or a dull adult or where he indicates that he does not understand that his right to counsel is unqualified." *Id*. at 235. In the March 27 plea colloquy, the magistrate judge specifically said "you have the right to a lawyer." There is no evidence that Benavides is a dull adult, and the fact that he does not speak English is the reason there is a court interpreter. There is also no indication that he did not understand that his right to counsel was unqualified. While the magistrate judge's statements fell short of the requirements of Rule 11(b)(1)(D) of the Rules of Criminal Procedure, Rule 11(h) provides that "A variance from the requirements of this rule is harmless error if it does not affect substantial rights." FED. R. CRIM. P. 11(h).

appointed counsel.[4]  Benavides has not met his collateral-attack

burden of showing that his waiver of counsel prior to the March

conviction was not competent and intelligent.  *See Tovar*, 124

S.Ct. at 1390.  Accordingly, the district court did not err by

enhancing Benavides's sentence based upon the February and March

convictions.

For the first time on appeal, Benavides argues that the

district court had the erroneous belief that it could not depart

downward from the statutory minimum sentence on the firearm

count.  Because Benavides did not raise this issue below, we

---

[4]The closest that Benavides comes to providing such evidence
is in his attorney's objections to the pre-sentence investigation
report: "Mr. Benavides states that at the time he waived counsel
[in the two 2000 cases and the 2001case], he had no knowledge of
the state or federal criminal justice systems and/or procedures."
This unsworn pleading was signed by the assistant federal public
defender, not by Benavides.  It is neither an affidavit or an
offer of proof, and it is not persuasive.  Moreover, the
statement is false on its face, because Benavides had (and did
not waive) counsel in his 2001 case and also because Benavides,
after his first conviction, did have some knowledge of the
federal criminal justice procedures.  *See Parke*, 113 S.Ct. at 527
("a defendant's prior experience with the criminal justice system
[is] relevant to the question whether he knowingly waived
constitutional rights").  In his February 22, 2000 conviction he
was expressly advised by the magistrate judge, *inter alia*, that
"You have the right to an attorney.  And, if you cannot afford an
attorney this Court will appoint one for you at no cost to you."
There is no reason to believe that Benavides had forgotten any of
this advice when, on March 27, 2000, he again appeared before a
magistrate judge in the same court on a repeat violation of the
same statute.  Indeed, in the March 27, 2000 proceeding Benavides
answered "yes" when the magistrate judge asked "[t]hey also tell
me that you were here for the same offense on February 22nd.  Is
that true?"  See, e.g., *Parke*, 113 S.Ct. at 527 (state court
properly "inferred that respondent remained aware in 1981 of the
rights of which he was advised in 1979").

6

review for plain error only. *See United States v. Thames*, 214 F.3d 608, 612 (5th Cir. 2000). The district court considered the overall sentence for both counts, and it made the overall downward departure recommended by the government. On paper, the district court deducted the full amount of the overall departure from the sentence imposed on the possession-with-intent-to-distribute count, and left unchanged the five-year statutory-minimum sentence for using and carrying a firearm during a drug trafficking offense. Nothing in the record indicates that the district court wished to make a greater downward departure than it made. Even if the court erroneously believed that it could not make a downward departure from the statutory minimum on the firearm count (and it is not entirely clear from the record that it did so believe), it could have made a significantly greater downward departure on the possession count (and there is absolutely nothing in the record to suggest that the court believed it could not do so). Accordingly, assuming arguendo that the district court erred and the error was plain, Benavides still cannot show that his substantial rights were affected and so he fails the third prong of the plain error standard. *See United States v. Olano*, 507 U.S. 725, 731–37 (1993); *United States v. Mares*, 402 F.3d 511, 521 (5th Cir. 2005).

Also for the first time on appeal, Benavides argues that the district court committed reversible error under *United States v.*

*Booker*, 125 S.Ct. 738 (2005), by sentencing him pursuant to a mandatory application of the sentencing guidelines.  We have differentiated between the two types of error addressed in *Booker*, and the error that Benavides asserts here is *Fanfan* error.  *See United States* v. *Martinez-Lugo*, 411 F.3d 597, 600 (5th Cir. 2005), *petition for cert. filed* (Sep. 2, 2005)(No. 05-6242).  Because Benavides did not raise this issue below, we review for plain error only.  *See United States v. Valenzuela-Ouevedo*, 407 F.3d 728, 732 (5th Cir. 2005).  Benavides concedes that he cannot meet the third prong of the plain error standard set forth in *Mares*, 402 F.3d at 520–21, in that he cannot prove that the district court's *Fanfan* error affected the outcome of the proceedings.  Instead, Benavides contends that *Fanfan* error is structural or that prejudice should otherwise be presumed.  Benavides concedes this court has already rejected the argument that a *Booker* error or the application of the then-mandatory guidelines is a structural error or that such error is presumptively prejudicial.  *Martinez-Lugo*, 411 F.3d at 601; *see also United States v. Malveaux*, 411 F.3d 558, 561 n.9 (5th Cir. 2005).  As Benavides acknowledges, this argument is foreclosed.

AFFIRMED.