UNITED STATES of America,
Plaintiff-Appellee,

v.

Cordell CASSELL et al., Defendants-Appellants.

Nos. 18289–18291.

United States Court of Appeals,
Seventh Circuit.

Oct. 6, 1971.

534

Charles O. Brizius, Lawrence S. Galka, Robert S. Bailey, Chicago, Ill., for defendants-appellants.

William J. Bauer, U. S. Atty., Archibald T. Le Cesne, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John

Peter Lulinski, Asst. U. S. Atty., of counsel.

Before KILEY, FAIRCHILD and SPRECHER, Circuit Judges.

KILEY, Circuit Judge.

Appellants Cassell, Jackson and Rice were indicted for conspiracy to commit various offenses with respect to United States Treasury welfare checks, in violation of 18 U.S.C. § 495 [1] and § 1708,[2] and with various substantive offenses.

The indictment was in twenty-one counts, charging eight other persons in addition to appellants. The other eight pled guilty before trial. Under district court order the government elected to proceed with count I charging Cassell, Rice and Jackson with conspiracy to obtain letters containing checks taken from the mail, and to forge payees' names and utter the checks with the intent to obtain a sum of money from the United States; with counts V and XVI charging Cassell with aiding and abetting, respectively, the unlawful uttering as true of a writing, to wit, a United States check containing a falsely made and forged endorsement, and unlawful forgery of endorsement to another writing, to wit, also a United States check, both with intent to defraud the United States; with counts IX and XXI charging Rice with unlawful possession of two United States checks, knowing they were stolen from the mail; and with count VI charging Jackson with unlawful forgery of a writing, to wit, a United States check, with intent to defraud. Cassell was found guilty on the three counts against him. Rice was found not guilty on count IX and guilty on the other two counts against him. Jackson was found not guilty under count I and guilty under VI. We affirm the convictions of Cassell and Rice on all counts, and reverse Jackson's conviction.

1. § 495. Contracts, deeds, and powers of attorney

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, within intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

2. § 1708. Theft or receipt of stolen mail matter generally

Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or

Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, pacakage, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—

Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

Proof of the alleged conspiracy showed the following scheme:[3] appellants would steal from the mail, or otherwise gain unlawful possession of, United States Treasury checks. In cashing the checks, application forms for Illinois vehicle licenses were used for purposes of identification. The name of the payee on the check was typed onto the form on that part normally returned to a car owner by the Secretary of State. A fictitious date, code number, license plate number and amount paid were filled in to give the appearance of a valid document. The document was then signed in the name of the payee of the check by the conspirator who was to utter it. The same person would endorse the government check when it was uttered.

Cassell and Rice do not, and could not reasonably, contend that their convictions of conspiracy are not supported by the evidence. The government was not required to prove all overt acts charged: proof of one can suffice. Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29, 32 (1954). The testimony of their companions in the unlawful enterprise amply supports the jury's finding that the alleged conspiratorial scheme, outlined above, was put in operation and directed mainly by Cassell and Rice.

## CASSELL

A. Cassell contends that the government failed to prove the descriptive averment in the indictment that the government checks allegedly forged and unlawfully uttered were *genuine*, and that this variance—between charge and proof —is fatal to his conviction. We see no merit in this contention.

The general rule that allegations and proof must correspond is based upon the requirement that the accused be informed of the charges against him so that he can prepare his defense and so that he may be protected against a second prosecution for the same offense. Goldbaum v. United States, 204 F.2d 74 (9th Cir. 1953), cert. denied, 346 U.S. 831, 74 S.Ct. 39, 98 L.Ed. 354; Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697 (1944), cert. denied, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588. Variance between proof at the trial and indictment is not fatal if these requirements are met. Heisler v. United States, 394 F.2d 692 (9th Cir. 1968), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed. 2d 448; Rathbun v. United States, 236 F.2d 514 (10th Cir. 1956), aff'd, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134. Here, the indictment specifically identified the checks allegedly forged, uttered or unlawfully possessed, and proof was made as to these specific checks. And defendant does not contend that the genuineness of the Treasury checks was an essential element of the crime charged. Consequently, we fail to see how he could have been misled in preparing his defense or how he could be indicted again for the same offense because of the inclusion of "genuine" in the indictment.

Also, at the trial no objection was made to the introduction of the checks into evidence on the ground that there was no proof of authenticity, and the question of "genuineness" was not specifically raised as grounds for acquittal. It is well established that a defense not raised in the trial court may not be raised for the first time on appeal. United States v. Sferas, 210 F.2d 69 (7th Cir. 1954), cert. denied sub nom. Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086; United States v. Jones, 204 F.2d 745, 749 (7th Cir. 1953), cert. denied, 346 U.S. 854, 74 S.Ct. 67, 98 L.Ed. 368; United States v. Kaiser, 138 F.2d 219 (7th Cir. 1943). *See also* Holmes v. United States, 323 F.2d 430 (7th Cir. 1963), cert. denied, 376 U.S. 933, 84 S.Ct. 704, 11 L.Ed.2d 652. He is not entitled to raise the question now.

B. Cassell claims prejudicial error in rulings which, he argues, permitted in-

---

3. The main witnesses against appellants were five women co-defendants and Fielding Monroe, Jr., charged with appellants in the conspiracy count, and Wandella Turner, named but not charged.

troduction of evidence of other crimes into the record.

Effie McKeever testified under count V that she had been the recipient of monthly Social Security checks, that she had not received Exhibit 3, an $800 United States Treasury check naming her as payee and bearing her name as endorsee on the reverse side, had never authorized any other person to receive it, had never endorsed it or authorized another to do so, and had never opened an account at the Pullman Trust and Savings Bank with it. Mrs. McKeever further testified that she had made a claim against the United States for this check. Alleged coconspirator Turner testified that she had opened a spurious account at the Pullman Bank in Effie McKeever's name and had forged checks drawn against that account. An officer of the Bank testified that the $800 check was deposited in the spurious account at the bank.

■ During the course of her cross-examination, Mrs. McKeever was asked what she did when the $800 check failed to arrive in the mail. In answering, she referred to a letter addressed to her by the Pullman Bank "stating that I had cashed a check and deposited so much money" there. No motion was made to strike this testimony. On redirect, over objection, she was permitted to read into evidence part of the bank's letter to the effect that a check for $426.10 "cashed by you here has been returned" because of unauthorized signature, and that her account had been debited in that amount. Appellants moved for mistrial on the ground that the $426.10 check was not subject to the indictment and was evidence of another crime. The motion was denied.

The subject of how the witness was informed that a spurious account in her name had been started at the Pullman Bank was opened on cross-examination. We think it was prudent and fair on redirect to have the jury informed that the bank told her that checks were placed in an account in her name at the bank and that these checks were being returned marked "signature not author-

ized." *See* United States v. Sebo, 101 F.2d 889, 891 (7th Cir. 1939). We see no abuse of discretion in the court's denial of the mistrial motion, especially with respect to the conspiracy count. *See* United States v. Wall, 225 F.2d 905, 907 (7th Cir. 1955), cert. denied, 350 U.S. 935, 76 S.Ct. 307, 100 L.Ed. 816.

■ Neither was the testimony with regard to the June Robinson check improperly admitted as evidence of another crime. Co-defendant Barbara Nalls testified that Rice gave her the June Robinson check to cash at a bank in Lyons, Illinois, that she went to the Lyons bank with Rice and gave the check to the cashier there, but, frightened when the check was questioned, left the bank. Bank employees Turner and Hill testified that they cashed the June Robinson check at the Lyons bank on September 25, 1965. This testimony was in proof of overt act (e) of count I charging that Rice, on September 25, 1965, transported Nalls to the Bank of Lyons for the purpose of cashing forged checks. Although the payee of the check was not named in the alleged overt act (e), the testimony of Nalls and the two bank employees made it clear that the unidentified check named in overt act (e) was the June Robinson check.

We see no necessity of discussing other similar claims of prejudice beyond saying that they are equally without merit in the light of the conspiracy charge.

■ C. We see no merit either in Cassell's claim that the 117 questions asked by the trial judge during the course of the trial "led the jury to believe the judge was helping prove the government case because he believed in it." The trial took five days, and 26 witnesses testified for the government, five of whom testified again in rebuttal. We are not persuaded the questions asked were improper as an abuse of discretion or a violation of judicial ethics. The questions were for the purpose of expediting the trial and clarifying testimony and therefore proper. Pollard v. United

States, 441 F.2d 566, p. 568 (7th Cir., 1971).[4] We do not think that these questions would leave the impression in the minds of the jurors that the judge credited the prosecution and disbelieved the defense. *Cf.* Glasser v. United States, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ D. During the course of the trial, counsel for Rice made a motion under 18 U.S.C. § 3500 for production of a witness' statement. The court said, in the jury's presence, that if counsel was looking for the 3500 report, the motion need not be made out of the jury's presence and that he was entitled to it. Later, out of the jury's presence, the court agreed that the motion should be made out of the jury's presence. Then, after the jury returned, the court told the jury the purpose of section 3500 reports for cross-examination.

Cassell argues that the jury could infer from what it was told that if a government witness were not cross-examined by use of the report, the witness must be telling the truth. We agree with the government, however, that since the witness on the stand, at the time of this incident, was vigorously cross-examined and was impeached by the 3500 report, and since all other government witnesses were thoroughly cross-examined, no prejudice is shown. United States v. Nielsen, 392 F.2d 849, 854 (7th Cir. 1968).

■ E. Finally, Cassell contends that the introduction into evidence of admissions by appellant Jackson denied Cassell's Sixth Amendment right to confrontation with, and to cross-examine, witnesses against him. This claim concerns a statement made by Jackson to government agents that the endorsement on the Carl and Blanche Ross check, subject of count VI, appeared to be his, but that he was not sure.

The government contends that Jackson's statement was voluntary and properly admissible. Although we are unimpressed by the government's contention, as will be seen hereinafter in discussing Jackson's conviction, we are unable to see how the jury verdict against Cassell can be attributed to prejudice arising from this incident in the light of the overwhelming evidence against him. Jackson's statement did not implicate either Cassell or Rice, but merely was an admission by Jackson with respect to count VI, which count named only Jackson. The statement did not go to prove the existence of a conspiracy or specifically implicate the co-defendants in a conspiracy. And the jury found Jackson not guilty under the conspiracy count. Consequently, even though the statement of Jackson was improperly admitted *see infra*, Cassell has shown no prejudice.

We see no reversible error in any contentions of Cassell either separately or taken together.

### RICE

■ Rice contends his Sixth Amendment right to a speedy trial was denied by the delay between the dates of the alleged offenses beginning in the summer of 1964 and his indictment in the summer of 1968 and his trial in November 1969.

It has been held that the right to a speedy trial is not denied by mere delay between the arrest and indictment, United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The defendant must show that he was prejudiced by the delay——United States v. Deloney, 389 F.2d 324, 325 (7th Cir. 1968); United States v. Haggerty, 419 F.2d 1003, 1007 (7th Cir. 1969)——or that the delay was purposeful or oppressive although if the delay is unduly long, some preju-

---

4. The court, at one point in the trial, instructed the jury that the judge did not ask questions to help or hurt either the prosecutor or the defendants, "but to get information for you, because if I do not understand something, it may well be you do not either."

dice may be presumed.[5] *See* United States v. Wixom, 441 F.2d 623, p. 627 (7th Cir. 1971); United States v. Kaufman, 393 F.2d 172, 175 (7th Cir. 1968), cert. denied, 393 U.S. 1098, 89 S.Ct. 892, 21 L.Ed.2d 789. Here defendant has made no showing of prejudice to support his contention. He does not argue that any evidence favorable to him had disappeared or been destroyed or that favorable witnesses had died in the interim. And the investigation and preparation obviously needed in this case involving many conspirators and many stolen and uttered checks argues against any contention that the pre-indictment delay was purposeful or oppressive. *See* United States v. Napue, 401 F.2d 107, 115 (7th Cir. 1968), cert. denied, 393 U.S. 1024, 89 S.Ct. 634, 21 L.Ed.2d 568. The pretrial motions of the various defendants and the setting and resetting of the trial date due to intervening vacations for the attorneys dispute Rice's argument that the post-indictment delay was purposeful or oppressive. *See* Dickey v. Florida, 398 U.S. 30, 38, 48, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We are unable to say that the district court should have dismissed the indictment against Rice on the ground that the delay was so prolonged and unnecessary that prejudice should be presumed. *Id.* at 55–56, 90 S.Ct. 1564 (Mr. Justice Brennan concurring.)[6]

■■■ Rice also claims that there is no evidence that the Winston check, subject of the unlawful possession charge of count XXI, was ever placed in, or stolen from, the mail and the failure of

proof compels acquittal. There is no merit in the claim. Mildred Winston testified that she received Social Security checks since 1953, that she had not received the July 3, 1966 check naming her as payee and had not endorsed it, that the signature on the back of the check was not her writing, and that after she reported not receiving it she received a replacement. Mrs. Winston also testified without objection that she "was told that the check was mailed." The check bore Rice's fingerprints, which is evidence of his possession. *See* Foston v. United States, 389 F.2d 86 (8th Cir. 1968), cert. denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1401. We think the evidence was sufficient prima facie to support a jury's finding that Rice had possession of the forged check after it had been stolen from the mail, in light of Mrs. Winston's testimony and Rice's unexplained possession. Smith v. United States, 343 F.2d 539, 543–544 (5th Cir. 1965), cert. denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99. *See also* United States v. Hines, 256 F.2d 561, 564 (2d Cir. 1958). Direct evidence as to the stealing of the check is not required. United States v. Campisis, 306 F.2d 308, 312 (2nd Cir. 1962), cert. denied sub nom. Coppolla v. United States, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229.

This court's decision in United States v. Logwood, 360 F.2d 905 (7th Cir. 1966), is inapposite. There defendant stole a letter from a window sill. We reversed defendant's conviction because the evidence failed to show the essential element that the relevant material was stolen from the mail.[7]

---

5. See Dickey v. Florida, 398 U.S. 30, 42, 54–55, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Mr. Justice Brennan, concurring).

6. There is a growing movement in legislatures toward determining certain periods of time within which cases must be brought to trial, for example, the 120-day rule in Illinois, *see* United States v. Wixom, 441 F.2d p. 626, n. 6 (7th Cir. 1971). A bill captioned "Speedy Trial Act of 1971" and providing generally for trial in 60 days but variable under district court rules is now being considered by

Congress. *See* S.895, 92d Cong., 1st Sess. (1971) (reported in 117 Cong.Rec. S16581 (daily ed. Feb. 22, 1971)).

The Second Circuit recently published rules for guidance of courts in that circuit. *See* United States ex rel. Frizer v. McMann, 437 F.2d 1312, 1317 (2d Cir. 1971). However, this circuit has not promulgated a similar rule.

7. Since the government proved that other checks were stolen from the mail in the same manner as the Winston check, and since the other counts were incorporated by reference into the conspiracy

We see no need of repeating, as to Rice's claim, what we said of Cassell's similar claim that he was prejudiced by the court's statements about the section 3500 incident. Suffice to say no additional argument by Rice changes our view that no prejudice is shown requiring reversal of Rice's conviction.

## JACKSON

As stated previously herein, Jackson was acquitted of conspiracy but convicted under count VI of forgery of the endorsement on the Carl and Blanche Ross check. The only evidence against Jackson with respect to count VI was an admission made by Jackson to government agent Dumas, a handwriting exemplar taken from Jackson, the check allegedly forged, and the opinion testimony of the government's handwriting expert that the forged endorsement was written by the same person who wrote the exemplar.

At the trial the court conducted a hearing, out of the jury's presence, upon a motion to suppress Jackson's admission and the handwriting exemplar on the ground of involuntariness. The hearing disclosed that when the admissions and exemplar were given, Jackson was under the auspices of the Federal Bureau of Prisons in a Pre-Release Guidance Center pending action on his parole. Before the admissions and exemplar were given, government agent Dumas had read Jackson a formal statement of his rights. Jackson refused to sign the form which contained a waiver of his rights. Jackson was then asked whether he had signed the name Blanche Ross on the back of the check, and he answered that the signature seemed to be his but he wasn't sure. He was then asked for a sample of his signature and he gave it. At the conclusion of the hearing the district court denied the motion to suppress and agent Dumas testified as to the foregoing facts. Jackson claims error in this ruling.

We agree with Jackson that the admission and exemplar were inadmissible under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Jackson, at the time of the interrogation, was in effect a federal prisoner, albeit under the auspices of the Pre-Release Guidance Program. A supervisor of the United States Probation Office testified that although a prisoner was allowed to leave the Center to seek employment and housing, he was subject to prison-type rules and regulations and had to account for the time he was away from the Center; and that if he walked out of the Center "freely" or overnight, he would be returned to prison. We think this means he was "deprived of his freedom of action in [a] significant way," and the interrogation was custodial. Orozco v. Texas, 394 U.S. 324, 327, 89 S.Ct. 1095, 1097, 22 L.Ed. 2d 311 (1969). *See also* Mathis v. United States, 391 U.S. 1, 4–5, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). Also the interrogation of Jackson at the Center was accusatory. The agents went to the Center with a group of checks they thought Jackson had forged. When they arrived there, they asked Jackson which of the checks he had forged and requested a handwriting sample. Such questions go beyond "[g]eneral on-the-scene questioning as to facts surrounding a crime," *see* Miranda v. Arizona, *supra*, 384 U.S. at 477, 86 S.Ct. at 1629, and clearly indicate that the *Miranda* warnings were required. *See* United States v. Lackey, 413 F.2d 655 (7th Cir. 1969).

No warning was given Jackson except that contained in the form which was read to Jackson by the government agents. The form told Jackson that he must understand his rights before interrogation; that he had the right to remain silent; that whatever he said could be used against him in court; that he had "the right to talk to a lawyer for advice before we question you and to have him with you during questioning;"

---

count, there is no merit to Rice's and Cassell's related contention that the government failed to prove that the checks were stolen. Moreover, co-defendant Fielding Monroe testified that Cassell and Rice stole checks from mailboxes.

and that "If you cannot afford a lawyer and want one, a lawyer will be appointed for you *if and when you go to Court or before a United States Commissioner;*" and that he had the right to stop the questioning at any time "until you talk to a lawyer." [8]

Under *Miranda,* Jackson was entitled to have court-appointed counsel present during the interrogation, and did not have to await appointment in court or before the commissioner. Miranda v. Arizona, *supra,* 384 U.S. at 473, 86 S.Ct. 1602. Jackson could have been misled by the insufficiency of the warning from understanding that he had that right. Consequently, the statement made by Jackson was inadmissible and this error requires reversal of his conviction. Fendley v. United States, 384 F.2d 923, 924 (5th Cir. 1967).

 We hold also that the handwriting exemplar obtained by the agents following the admission also was inadmissible as "fruit of the poisoned tree." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). We are not persuaded to the contrary by the various federal court decisions upholding the compelling of modeling of clothes,[9] submission to blood tests,[10] use of boots and shoes,[11] and of fingerprinting.[12] True, in Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the Supreme Court held that taking of exemplars of handwriting did not violate Fifth Amendment rights because the taking did not compel a "communication." But even fingerprinting evidence is inadmissible if obtained in violation of the constitution. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). *See* In re Dionisio, 442 F.2d 276 (7th Cir., 1971).

For the reasons given, the judgments against Cassell and Rice are affirmed. The judgment against Jackson is reversed.

---

8. Several months later a revised form was adopted by the F.B.I. in which the italicized part of the sentence quoted above was eliminated.

9. Holt v. United States, 218 U.S. 245, 252–253, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

10. Schmerber v. California, 384 U.S. 757, 761–765, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

11. Cassady v. United States, 410 F.2d 379, 380 (5th Cir. 1969); McClard v. United States, 386 F.2d 495, 500 (8th Cir. 1967), cert. denied sub nom. Ussery v. United States, 393 U.S. 866, 89 S.Ct. 149, 21 L.Ed.2d 134.

12. Napolitano v. United States, 340 F.2d 313, 314 (1st Cir. 1965).