**UNITED STATES, Appellant,**

v.

**Jerome RAWLS, Appellee.**

**No. 7263.**

District of Columbia Court of Appeals.

Argued Oct. 10, 1973.

Decided July 24, 1974.

Rehearing and Rehearing en Banc
Denied Aug. 21, 1974.

N. Richard Janis, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Lawrence P. Lataif, Asst. U. S. Attys., were on the brief, for appellant.

George C. Dreos, Washington, D. C., appointed by this court, with whom Jeffrey Freund, Washington, D. C., also appointed by this court, was on the brief, for appellee.

Before REILLY, Chief Judge, and GALLAGHER and NEBEKER, Associate Judges.

GALLAGHER, Associate Judge:

This case is here on an appeal of the government[1] from an order suppressing inculpatory statements of Jerome Rawls prior to his trial on an indictment charging armed robbery,[2] robbery,[3] assault with a dangerous weapon,[4] and obstructing justice.[5] We reverse.

The facts were developed at the hearing upon the motion to suppress and are not in dispute.[6] Officer Sullivan was patrolling in a police cruiser when a driver in a van passing in the opposite direction flagged him down. The driver advised that he was an employee of The Washington Post, that one of his paperboys had been robbed and that they had just observed one of the perpetrators walking down the street carrying an armload of clothes. These two joined Officer Sullivan and his partner and together they proceeded to search the area until the victim identified appellee as his assailant. Appellee was placed under arrest and transported to the Fifth District Substation.

1. D.C.Code 1973, § 23–104(a)(1).

2. D.C.Code 1973, §§ 22–2901, 3202.

3. D.C.Code 1973, § 22–2901.

4. D.C.Code 1973, § 22–502.

5. D.C.Code 1973, § 22–703.

6. The defendant did not testify at the hearing on the motion to suppress.

After arrival at the substation Officer Sullivan began processing appellee, seventeen years old, and advised him of his rights by reading from the card, Form PD-47,[7] carried by most police officers. Appellee said nothing of an incriminating nature. Officer Sullivan then learned that a gun had been used in the robbery and, in accordance with police practice, appellee was handcuffed and taken to the robbery squad office to be processed. During the ride to the robbery squad office appellee was again advised of his rights and it was at this time that he made the incriminating statements which the government, by this appeal, in effect asserts are "a substantial proof of the charge pending against the defendant." D.C.Code 1973, § 23-104(a)(1).

Officer Sullivan testified as to the warnings he had given appellee prior to eliciting the incriminating statements:

Q. [by the prosecutor]: Now, Detective Sullivan, going back to your statement that you advised him of his rights, would you tell His Honor exactly what you said to Mister Rawls?

A. In the Fifth District Substation I read him the PD 47, I believe it is, which is the rights card, then I also read it to him again in the vehicle on the way to the Robbery Squad. I read him the words verbatim and then also explained [them] to him. I asked him several questions and explained his rights to him more clearly.

Q. All right. Would you tell His Honor what those questions were and what Mister Rawls answers were?

A. I asked him if he had been arrested before, which I knew that he had, and he stated he had.

THE COURT: What was that?

DETECTIVE SULLIVAN: If he had been arrested before in the past. I asked him if he knew he had a right to a lawyer. And that if he couldn't afford a lawyer that he would be provided one and I asked him if he had one in the past and he stated that he had. *I explained to him that the lawyer would be [provided] the next day.* . . . I then asked him if he understood his rights, he said he did.

Q. Did you ascertain whether or not Mister Rawls whether—did you ascertain from Mister Rawls whether he—whether or not he had been advised of his rights in connection with any previous matters?

\*    \*    \*    \*    \*    \*

A. Yes, sir; I had asked [him] if he had been read his rights in the past and he said that he had. I went along with the fact that he had been arrested before.

Q. Do you know, Detective Sullivan, how many times in the past Mister Rawls had been arrested before?

A. I believe it's four or five times, in that area.

Q. Detective, did you ask Mister Rawls to sign the PD Form 47?

A. At the Robbery Squad I had him sign the PD 47 and answer the questions which are on the back of the form. He

---

7. Metropolitan Police Department PD-47 reads as follows:

   WARNING AS TO YOUR RIGHTS
   You are under arrest. Before we ask you any questions, you must understand what your rights are.
   You have the right to remain silent. You are not required to say anything to us at any time or to answer any questions. Anything you say can be used against you in court.
   You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.
   If you cannot afford a lawyer and want one, a lawyer will be provided for you.
   If you want to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

was again read his rights at the Robbery Squad. [Emphasis added.]

After the conclusion of direct and cross-examination the court made its own inquiry into the warnings given by Officer Sullivan:

Q. [By the Court] On your way down to the Robbery Squad, with the defendant, you stated that you questioned him. Among other things, you said you asked him whether he wanted—whether he wanted a lawyer?

A. That's correct.

Q. What did he say?

A. He said no. Your Honor, I don't know if I asked him whether he wanted one, but I told him he could have one if he wanted to, and he didn't have to say anything until he spoke to a lawyer. I'm not sure whether I asked him whether he wanted a lawyer or not.

Q. *You told him that if he wanted a lawyer, he'll get one the next day?*

A. *Right. He'll get one when he goes to Court.*

Q. Was there any discussion about his having a lawyer the same day?

A. I don't believe so, Your Honor. [Emphasis added.]

The government's second witness, Officer Huff, then took the stand. At the robbery squad office appellee and Officer Sullivan met Officer Huff, who, using the standard form, advised appellee of his rights again. Appellee signed the form indicating that he had been advised of his rights. Officer Huff then overheard Officer Sullivan talking with appellee "about a confession that he had apparently already made" and he heard appellee further explain the crime.[8]

The court then heard argument on the motion and thereafter ordered the statement suppressed. The court's reasons were as follows:

. . . If . . . he can't get a lawyer until tomorrow, and he can't afford a lawyer, then he is being denied equal protection, because a [d]efendant with money could get a lawyer at that time.

All I have before me is the testimony that the police stated that he can't get a lawyer until tomorrow.

Now I don't see that on the rights card, there are cases which hold that if the [d]efendant requests a lawyer the police should make every effort to get him a lawyer then, not the next day, but then. And, I think that we get—we entered into a perilous course when the law permits and sanctions this interpretation to being grafted on to Miranda. I think it's calculated to confound a defendant in the exercise of his rights. It's not calculated to elucidate. It's not calculated to clarify. It's . . . calculated to confound.

The court suppressed the statements and the government appeals.

To begin with, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) states:

[T]he accused must be adequately and effectively apprised of his rights . . . [384 U.S. at 467, 86 S.Ct. at 1624.]

No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. [384 U.S. at 470, 86 S.Ct. at 1626.]

[A]n individual held for interrogation must be clearly informed that he has the

---

8. A Youth Division Officer appears to have been present at both the substation and the robbery squad office.

right to consult with a lawyer and to have the lawyer with him during interrogation . . . [384 U.S. at 471, 86 S. Ct. at 1626.]

[I]t is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed for him. Without this additional warning, the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer, if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. [384 U.S. at 473, 86 S.Ct. at 1627.]

This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth

Amendment privilege so long as they do not question him during that time. [384 U.S. at 474, 86 S.Ct. at 1628.]

The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissiblity of any statement made by a defendant. [384 U.S. at 476, 86 S.Ct. at 1629.]

The government characterizes the trial judge's concern as being centered upon the stated inability of the police to provide appellee with an attorney *immediately* (emphasis by appellant); and the government points to the caveat in *Miranda* that the opinion did not stand for the proposition that police must have a "station house lawyer" always present to advise prisoners. On the other hand, appellee characterizes the trial judge's concern as being centered upon the inconsistency of advising a defendant on the one hand that he may have court-appointed counsel with him during questioning and, on the other hand, that such counsel will not be provided until the next day, pointing out *Miranda's* caution that only by effective explanation to the indigent of his right to appointed counsel can there be assurance that he was truly in a position to exercise it.

The government cites substantial authority for the proposition that the embellishment here placed upon the standard *Miranda* warning was not erroneous.[9] Appellee

---

9. *E. g.* Massimo v. United States, 463 F.2d 1171 (2d Cir. 1972), cert. denied, 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700 (1973); United States v. Carneglia, 468 F.2d 1084 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973); United States v. Lacy, 446 F.2d 511 (5th Cir. 1971); United States v. Lamia, 429 F.2d 373 (2d Cir.), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970); Mayzak v. United States, 402 F.2d 152 (5th Cir. 1968); Emler v. State, Ind., 286 N.E.2d 408 (1972); Rouse v. State, 255 Ind. 670, 266 N.E.2d 209 (1971); People v. Williams, 131 Ill.App.2d 149, 264 N.E.2d 901 (1970); People v. Campbell, 26 Mich.App. 196, 182 N.W.2d 4 (1970), cert. denied, 401 U.S. 945, 91 S.Ct. 960, 28 L.Ed.2d 228 (1971); Steel v. State, 246 Ark. 75, 436 S.W.2d 800 (1969); Jones v. State, 253 Ind. 235, 252 N.E.2d 572 (1969); People v. Swift, 32 A.D.2d 183, 300 N.Y.S.2d 639 (1969), cert. denied, 396 U.S. 1018, 90 S. Ct. 584, 24 L.Ed.2d 510 (1970); State v. Ruud, 41 Wis.2d 720, 165 N.W.2d 153 (1969). *See also* Wright v. North Carolina, 483 F.2d 405 (4th Cir. 1973), cert. denied, 415 U.S. 936, 94 S.Ct. 1452, 39 L.Ed.2d 494 (1974); United States v. Pacelli, 470 F.2d 67 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973); Tasby v. United States, 451 F.2d 394 (8th Cir. 1971), cert. denied, 405 U.S. 992, 92 S.Ct. 1262, 31 L.Ed.2d 459 (1972); Klingler v. United States, 409 F.2d 299 (8th Cir.), cert. denied, 396 U.S.

cites other decisions for the contrary proposition that the embellishment given the *Miranda* warning rendered it void as a matter of law.[10]

The authorities cited relate to the following enlargement and variations thereon: "we have no way of giving you a lawyer, but one will be appointed for you if you wish, *if and when you go to court.*" (Emphasis added.) According to the court in United States v. Cassell, 452 F.2d 533, 541 n. 8 (7th Cir. 1971), the Federal Bureau of Investigation has deleted that statement.[11] Even one court which has refused to invalidate a *Miranda* warning because of this statement, noted at the same time that it is arguably misleading when an individual has just been advised that he may have court-appointed counsel during interrogation. United States v. Carneglia, 468 F.2d 1084, 1091 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973). The occurrence of conflicting authorities has also

been stated to indicate law enforcement would be well advised to delete the phrase. Burge v. State, 282 So.2d 223, 227 (Miss. 1973).

Our own conclusion is that the embellishment added to the standard *Miranda* warning in this particular case, *viz.*, that a lawyer would not be provided until the next day, does not rise to the same level of potential confusion as the statement at issue in the authorities previously cited. The recurrence of this question in the decisions, however, points up the unnecessary litigation that is created by embellishments on the essentials of *Miranda.*[12]

Under the circumstances of this case, we hold the trial court erred when it ruled, as a matter of law, that the officer's unnecessary embellishment on the *Miranda* warning rendered it void. In so doing we do not mean to say we do not understand the trial court's concern. Our view here is, however, that this is but one factor to be

---

859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); People v. Gilmer, 511 P.2d 494 (Colo.1973); Burton v. State, Ind., 292 N.E.2d 790 (1973); Burge v. State, 282 So.2d 223 (Miss.1973); Lowe v. State, 250 So.2d 310 (Fla.App.1971). *Cf.* Schade v. State, 512 P.2d 907 (Alaska 1973).

10. United States ex rel. Williams v. Twomey, 467 F.2d 1248 (7th Cir. 1972); United States v. Garcia, 431 F.2d 134 (9th Cir. 1970); Gilpin v. United States, 415 F.2d 638 (5th Cir. 1969); United States v. Vasquez-Lopez, 400 F.2d 593 (9th Cir. 1968); Sullins v. United States, 389 F.2d 985 (1968). *See also* United States v. Cassell, 452 F.2d 533 (7th Cir. 1971); Lathers v. United States, 396 F.2d 524 (5th Cir. 1968); Reed v. State, Ark., 498 S.W.2d 877 (1973); State v. Carpenter, 211 Kan. 234, 505 P.2d 753 (1973); State v. Grierson, 95 Idaho 155, 504 P.2d 1204, 1207 n. 1 (1972) (dicta); Schorr v. State, 499 P.2d 450 (Okl.Cr.1972); Square v. State, 283 Ala. 548, 219 So.2d 377 (1969); People v. Clark, 2 Cal.App.3d 510, 82 Cal.Rptr. 682 (1969); State v. Robbins, 4 N.C.App. 463, 167 S.E.2d 16 (1969); Brooks v. State, 229 A.2d 833 (Del.1967). *Cf.* Schade v. State, 512 P.2d 907 (Alaska 1973).

11. In view of the amount of litigation generated on the use of the *volunteered statement,* this would appear to be a wise decision.

12. If in the future it should appear that this particular embellishment on *Miranda* is becoming a pattern, we might well be required to examine whether it has become a tactic intended to confuse suspects on their *Miranda* rights, as the trial court found here. In other words, if it should later appear that such a statement is being used in a manner which may well result in confusion on the part of suspects as to their *Miranda* rights, this may then require examination.

The Supreme Court's recent decision in Michigan v. Tucker, — U.S. —, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), specifically confined its holding to evidence gained as a result of statements made by the defendant ("fruits") without having been given the full "*Miranda* warnings." The "narrower ground" (— U.S. at —, 94 S.Ct. 2357) upon which the court rested its decision did not concern itself with the admissibility of statements made directly by the defendant (— U.S. at —, 94 S.Ct. 2357). In addressing itself to the *fruits* of pre-*Miranda* statements which were excluded at a post-*Miranda* trial, the court took into consideration the "complete good faith" of the official action (— U.S. at —, 94 S.Ct. 2357). If, as to such "fruits", the good faith of an officer is important, it would appear to apply with even more force to a statement made by a defendant.

considered in the determination of whether the defendant made a knowing and intelligent waiver of his rights and that the waiver was voluntary. *See, e. g.*, In the matter of J. F. T., D.C.App., 320 A.2d 322 (1974); Rosser v. United States, D.C.App., 313 A.2d 876 (1974).

Accordingly, the order appealed from must be reversed and remanded for further proceedings so that the facts surrounding appellant's inculpatory statements might be determined and the question of waiver resolved.[13]

So ordered.

13. Our review here is confined to the narrow ground upon which the trial court based its grant of the motion to suppress.