*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CF-0546

SEAN TYLER GREEN, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2015-CF1-014494)

(Hon. Judith Bartnoff, Trial Judge)

(Argued December 5, 2023                    Decided May 23, 2024)

*Gregory M. Lipper* for appellant.

*Daniel J. Lenerz*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Michelle D. Jackson*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY, MCLEESE, and SHANKER,* *Associate Judges*.

---

* Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Associate Judge Shanker has been assigned to take her place on the division.

McLEESE, *Associate Judge*: Appellant Sean Tyler Green challenges his convictions for first-degree murder and related offenses. We hold that Mr. Green's post-arrest statements were obtained in violation of the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966). We therefore vacate Mr. Green's convictions and remand the case for further proceedings.

## I. Factual and Procedural Background

### A. Mr. Green's Motion to Suppress

Before trial, Mr. Green moved to suppress evidence of videotaped statements he made to the police after his arrest, arguing that the statements were taken in violation of *Miranda*. The evidence at the hearing on the motion to suppress included the following.

Detective Anthony Patterson questioned Mr. Green. After explaining the charges to Mr. Green, Detective Patterson gave Mr. Green advice about *Miranda* rights. Those rights were accurately stated in writing on a standard police-department form ("PD-47") that Detective Patterson provided to Mr. Green. *See generally, e.g.*, *Henson v. United States*, 563 A.2d 1096, 1097 (D.C. 1989) (PD-47 is standard advice-of-rights form). Detective Patterson also orally advised Mr. Green of his rights. Detective Patterson's initial oral advice for the most part

followed the wording of the written advice, with two important differences that are italicized in the following quote:

> You have the right to talk to a lawyer for advice before we question you and to have [a lawyer] with you during questioning. *That does not happen here. You know, there is not a lawyer out there. We're not going to bring a lawyer in here to talk to you. That happens when you get down to court, okay?* If you cannot afford a lawyer and want one, a lawyer will be provided for you. *That also happens when you get to court. They'll, you know -- they have a court-appointed lawyer unless you have your family -- if they want to pay for a lawyer, you can do that as well. All right?* If you want to answer questions now, without a lawyer present, you still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer, okay?

Detective Patterson then asked Mr. Green the first question on the PD-47:

> Detective: Okay? Now, have you read, or had read to you, the warning as to your rights?
>
> Mr. Green: Was it this paper?
>
> Detective: That's what I just did.
>
> Mr. Green: Uh-huh.
>
> Detective: I read it to you, okay?
>
> Mr. Green: I mean, you just gave me a whole lot all in one.
>
> Detective: Okay, all right. But this is -- I am referring to your warning -- your rights.

Mr. Green checked a box on the PD-47 to indicate that he had read his rights or had them read to him. Detective Patterson then asked Mr. Green the second and

third questions on the PD-47: whether Mr. Green understood his rights and whether he wished to answer any questions. Mr. Green eventually replied in the affirmative to both questions, after some back-and-forth in which Mr. Green expressed confusion and Detective Patterson further explained the reasons for Mr. Green's arrest.

Another detective who was present, Detective Garner, interjected the following:

> You can read it over. Because you can answer questions and you still have -- it says right there -- that you still have to stop answering any questions until you talk to a lawyer. So, if you want to talk to us and then, eventually, you just say, "Okay, I don't want to talk anymore", that's what that's saying.

Detective Patterson also said. "At any point -- we're talking to you -- at any point during our conversation about this, if you decide, 'Hey, Detective Patterson, Detective Garner, I don't want to talk about it anymore', you have that right."

Finally, Detective Patterson asked Mr. Green the last question on the PD-47, adding the material italicized in the following quote:

> And, the last question is, are you willing to answer questions without having an attorney present? *And, again, we don't -- there's not going to -- we don't bring attorneys in here. So, that's -- you aren't going to have an attorney present anyway.*

Mr. Green waived his *Miranda* rights and so indicated in writing on the PD-47.

The trial judge denied the motion to suppress, ruling that Mr. Green had knowingly and voluntarily waived his *Miranda* rights.

## B.  The Evidence at Trial

The legal issue that we decide in this appeal does not turn on the evidence introduced at trial, so we only briefly summarize that evidence.

Derrick Black was shot and killed in July 2015.  A witness saw two individuals running across a street, pursued by a man who fired several shots.  One of the men being chased fell in the middle of the street.  The shooter ran up to that man, who was Mr. Black, shot him twice more as he lay on the ground, and then ran away.  A police surveillance camera positioned about a block away recorded the shooting, and an enhanced version of the recording was shown at trial.

Police recovered from the scene a cellphone, a magazine containing several rounds of ammunition, and several cartridge casings.  A search revealed that the phone had been set up with an email address and phone number associated with Mr. Green.  Additionally, DNA on the magazine matched Mr. Green's DNA.

Mr. Green was arrested several months after the shooting and was questioned by the police.  During his interview, Mr. Green made several false exculpatory

statements, including that he had been in drug treatment from July 2015 to September 2015 and that his phone had been stolen before the shooting. Mr. Green at one point admitted to committing the shooting, but he claimed that he did so because someone had threatened to kill him unless he killed Mr. Black. Eventually, Mr. Green said that he did not recall the shooting but that he believed that another person had committed the shooting.

## II. Analysis

The focus of the briefing in this case, and of the trial court's ruling, was on whether Mr. Green's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. At oral argument, however, much of the discussion focused on a related but antecedent question: whether the advice of rights given to Mr. Green was legally adequate. *See generally, e.g., Miranda*, 384 U.S. at 467 ("The accused must be adequately and effectively advised of his [or her] rights . . . ."); *id.* at 470 ("No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given.").

The brief of the United States acknowledges the requirement that adequate advice of rights must be provided and discusses cases interpreting the requirement. The United States did not explicitly contend at oral argument that the question whether that requirement was met in this case was not properly before this court for decision. Nor did the United States request an opportunity to file a supplemental

brief more fully addressing the question. Moreover, because the advice of rights in this case was videotaped, there is no factual dispute as to what advice the police gave Mr. Green. With the exception of one factual point that we discuss *infra*, whether the advice of rights provided in this case was adequate is therefore a pure question of law that we can decide de novo. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 604-05 (6th Cir. 2016) ("[T]he question before us is a legal one: Given the undisputed words that were said and the undisputed recording of them, were the [warnings] legally sufficient?") (citing cases). Under the circumstances, and seeing no procedural unfairness, we exercise our discretion to consider the issue. *See generally, e.g.*, *Outlaw v. United States*, 632 A.2d 408, 410 n.7 (D.C. 1993) ("[A] court may consider an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.") (ellipsis and internal quotation marks omitted).

The Supreme Court held in *Miranda* that "statements made by an accused while in police custody are inadmissible unless the police[,] prior to questioning, warn [the accused] that [the accused] has the right to the presence of an attorney." *Di Giovanni v. United States*, 810 A.2d 887, 891 (D.C. 2002) (ellipses and internal quotation marks omitted). That warning, like the other warnings required by *Miranda*, is necessary because "interrogation in certain custodial circumstances is

inherently coercive." *New York v. Quarles*, 467 U.S. 649, 654 (1984) (footnote omitted).

*Miranda* warnings need not be provided in the precise words used by the Supreme Court in *Miranda* in order to be valid. *See, e.g.*, *Henson v. United States*, 563 A.2d 1096, 1097 (D.C. 1989) (Supreme Court "has never insisted that the warnings be given in the exact words of [*Miranda*]"). Nevertheless, in cases reaching back nearly fifty years, this court has emphasized the risk created when officers depart from the wording approved by the Supreme Court in *Miranda*. *See id.* ("We take this occasion, however, to repeat an admonition expressed by us over a decade ago in reviewing another case in which an officer expanded upon the language of the standard *Miranda* warning. We noted that 'the recurrence of this question in the decisions, however, points up the unnecessary litigation that is created by embellishments on the essentials of *Miranda*.'") (quoting *United States v. Rawls*, 322 A.2d 903, 907 n.12 (D.C. 1974)) (brackets omitted).

In considering whether the advice of rights in this case was legally adequate, we must examine the advice as "a totality," to determine whether the advice "reasonably convey[ed the] rights as required by *Miranda*." *Duckworth v. Eagan*, 492 U.S. 195, 203, 205 (1989) (internal quotation marks omitted). We hold that the advice of rights in this case, considered as a totality, did not reasonably convey to

Mr. Green that he had a right to the assistance of a lawyer before and during interrogation.

Detective Patterson's initial advice about the right to the assistance of a lawyer presents a mixed picture. On one hand, in the language underlined in the quote below, Detective Patterson clearly stated that Mr. Green had a right to talk to a lawyer before questioning, to have a lawyer present during questioning, and to stop answering at any time until he talked to a lawyer. On the other hand, in the language italicized in the quote below, Detective Patterson made clear that Mr. Green was not going to actually have access to a lawyer until Mr. Green went to court.

> <u>You have the right to talk to a lawyer for advice before we question you and to have [a lawyer] with you during questioning</u>. *That does not happen here. You know, there is not a lawyer out there. We're not going to bring a lawyer in here to talk to you. That happens when you get down to court, okay?* If you cannot afford a lawyer and want one, a lawyer will be provided for you. *That also happens when you get to court. They'll, you know -- they have a court-appointed lawyer unless you have your family -- if they want to pay for a lawyer, you can do that as well. All right?* If you want to answer questions now, without a lawyer present, you still have the right to stop answering at any time. <u>You also have the right to stop answering at any time until you talk to a lawyer, okay?</u>

The Supreme Court has made clear that it is lawful under *Miranda* for the police to decline to provide a lawyer to a suspect before and during interrogation. *Eagan*, 492 U.S. at 204 ("*Miranda* does not require that attorneys be producible on call . . . . If the police cannot provide appointed counsel, *Miranda* requires only that

the police not question a suspect unless [the suspect] waives [the] right to counsel."). Thus, Detective Patterson's statements that a lawyer would not be provided to Mr. Green were not themselves contrary to the requirements of *Miranda*. Nor were those statements logically inconsistent with the right to counsel under *Miranda*, because a suspect who wants to talk to a lawyer before questioning, or to have a lawyer present during question, can decline to answer questions if the police are not willing to accommodate the suspect's desire for the assistance of a lawyer.

Nevertheless, the Supreme Court has acknowledged the concern that can arise when "the reference to the right to appointed counsel [is] linked to a future point in time *after* the police interrogation." *Eagan*, 492 U.S. at 204 (brackets and internal quotation marks omitted). In some circumstances, such linkage can cause the advice of rights to fail to adequately "apprise the accused of [the] right to have an attorney present if [the accused] chose to answer questions." *Id.* at 205; *see also Rawls*, 322 A.2d at 907 n.12 (noting concern that statement that attorney would not be provided until suspect went to court could "be . . . used in a manner which may well result in confusion on the part of suspects as to their *Miranda* rights"). That is so because a suspect who wants the assistance of a lawyer but is being denied such assistance might not realize that the correct way to respond is to refuse to answer questions unless and until a lawyer is provided. Unless that point is made explicit, such a suspect might instead conclude that the right to counsel is simply not being honored.

If the passage just quoted were the only relevant advice of rights in this case, the outcome of this case would arguably be controlled by the Supreme Court's decision in *Eagan*. In *Eagan*, the advice of rights included the following, with the disputed language italicized:

> *You have a right to talk to a lawyer for advice before we ask you any questions, and to have [a lawyer] with you during questioning. . . . We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer.

492 U. S. at 198.

Although the advice of rights in *Eagan* included one statement that tied the right to counsel to a future point after interrogation, the Supreme Court held that the advice of rights as a whole was adequate, because other statements in the advice of rights adequately clarified that Mr. Eagan had a right to counsel before and during questioning. *Eagan*, 492 U.S. at 200-05. The initial advice from Detective Patterson quoted above seems relatively comparable to the passage just quoted from *Eagan*. We also note that in this case Mr. Green signed the PD-47, which explicitly stated that Mr. Green had the right to talk to a lawyer before questioning, to have a lawyer present at questioning, and to stop questioning at any time to talk with a lawyer.

This case differs from *Eagan*, however, because of several additional problematic circumstances. First, after orally advising Mr. Green as described above, Detective Patterson asked if Mr. Green had read, or had read to him, the warning as to his rights. When Mr. Green asked, "Was it this paper?," referring to the PD-47, Detective Patterson indicated that he had just read the PD-47 to Mr. Green. That was imprecise at best, because in fact Detective Patterson had provided Mr. Green with additional oral advice that was not reflected on the PD-47. Moreover, it does not appear from the videotape that Mr. Green ever actually read the advice of rights on the PD-47, as opposed to relying on Detective Patterson's oral advice of rights. For these reasons, we do not view the written advice of rights as providing useful clarification of Mr. Green's rights.

Second, during the advice of rights, Mr. Green repeatedly indicated his confusion. When asked whether he had read the warnings or had them read to him, Mr. Green said, "you just gave me a whole lot all in one." When asked whether he understood his rights and wanted to answer questions, Mr. Green said, "I mean, I got some questions I would like to ask. I mean, I'm so . . . confused right now." When asked again whether he wanted to answer questions, Mr. Green said, "I'm just confused about -- I mean, I'm sorry. I heard what you said but it's just, that's a lot to take in."

We recognize that the trial court found as a matter of fact that Mr. Green's expressions of confusion related to the charges and evidence against Mr. Green rather than to the advice of rights. After reviewing the record, including the video recording of Mr. Green's interrogation, however, we conclude that this factual finding was clearly erroneous. *See generally, e.g.*, *Zanders v. United States*, 75 A.3d 244, 247 (D.C. 2013) (court will uphold trial court's factual findings unless those findings are clearly erroneous). It is true that Detective Patterson testified that he understood Mr. Green's expressions of confusion to relate to the charges and evidence against Mr. Green. With respect to the three expressions of confusion just described, however, we think that Mr. Green was clearly expressing confusion at least in part about the advice of rights. That was what was being discussed at the time. Moreover, during the interview Detective Patterson clearly interpreted these expressions of confusion to be about the advice of rights, because Detective Patterson responded each time by discussing the advice of rights. In determining whether Mr. Green was adequately advised of his rights, we therefore take into account that Mr. Green repeatedly expressed confusion to Detective Patterson. *See Doody v. Ryan*, 649 F.3d 986, 1004 (9th Cir. 2011) (holding *Miranda* warnings inadequate because, among other things, "[d]espite . . . [defendant's] subsequently conveyed confusion . . . [the detective] ignored [defendant's] query[] and moved on to the next item on his printed list"); *cf., e.g.*, *Di Giovanni*, 810 A.2d at 894 (in assessing whether police officer's "embellishments" of advice of *Miranda* rights

"vitiated the validity" of suspect's waiver of rights, court states, "Here, we are presented with an appellant who was clearly having trouble understanding [] his rights[] and was therefore completely reliant on Sergeant Cortright's explanations and embellishments.").

Third, immediately after Mr. Green's third expression of confusion, Detective Garner gave further oral advice that was confusing and inaccurate, saying, "[I]t says right there -- that you still have to stop answering any questions until you talk to a lawyer.  So, if you want to talk to us and then, eventually, you just say, 'Okay, I don't want to talk anymore', that's what that's saying."

Fourth, when discussing the last question on the PD-47—whether Mr. Green was willing to answer questions without having an attorney present—Detective Patterson told Mr. Green that "[W]e don't bring attorneys in here.  So . . . you aren't going to have an attorney present anyway."  That comment was not qualified in any way, and Detective Patterson did not explain to Mr. Green that if Mr. Green did not wish to answer questions without a lawyer, the police would honor that preference and would not question Mr. Green in the absence of a lawyer.  Rather, Detective Patterson's final comment would naturally be understood to indicate that there would be no point to Mr. Green's invoking rather than waiving his right to assistance of counsel.

We view this case as quite different from *Eagan*, in which there was a single comment that tied the right to counsel to a future point after interrogation, but other statements in the advice of rights both before and after that comment adequately clarified that Mr. Eagan had a right to counsel before and during questioning. *Eagan*, 492 U.S. at 200-05. Rather, we view this case as comparable to *Robinson v. United States*, 142 A.3d 565 (D.C. 2016), which also involved Detective Patterson. In *Robinson*, Detective Patterson read a suspect the *Miranda* warnings but added a comment that "we don't provide you a lawyer here." *Id.* at 567. Relying on *Eagan*, we held that this comment by itself did not render the advice of rights legally inadequate. *Id.* at 569-70. We nevertheless held that Mr. Robinson's statements were not lawfully obtained under *Miranda*. Our holding rested on the fact that Detective Patterson then read three of the four questions on the PD-47 form, but intentionally omitted the fourth question—"Are you willing to answer any questions without having an attorney present?" *Id.* at 570. Detective Patterson testified as to his reason for omitting the fourth question: "I'd already told [Mr. Robinson] that he was not going to have a lawyer present during questioning. Once he agreed to talk to me I didn't see any point in asking him if he wanted to talk to me without a lawyer present." *Id.* at 571. We held that Detective Patterson's failure to ask Mr. Robinson whether Mr. Robinson was willing to answer questions without an attorney "produce[d] the obvious concern that [Mr.] Robinson did not intentionally abandon his right to have counsel present during questioning." *Id.*

This case obviously differs from *Robinson*, because in this case Detective Patterson did ask Mr. Green whether he was willing to answer questions without having an attorney present. In our view, however, the comments that Detective Patterson interjected right before Mr. Green answered that question essentially informed Mr. Green that there was no point to invoking the right to counsel, because counsel would not be provided.

For the foregoing reasons, we hold that Mr. Green was not adequately advised of his *Miranda* rights and that evidence of Mr. Green's statements therefore should not have been admitted into evidence at trial. The United States acknowledges that it cannot establish that the admission of Mr. Green's statement into evidence was harmless. We agree, and we therefore vacate Mr. Green's convictions and remand for further proceedings.

Finally, we note that Mr. Green also challenges the jury instruction on the elements of the offense of unlawful possession of a firearm. Mr. Green acknowledges that he did not raise that issue in the trial court, however, and he relies on a case decided after trial in this case. *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Because we are vacating all of Mr. Green's convictions on a different ground, we need not consider Mr. Green's newly raised challenge to the jury instruction. Rather, we leave that issue to be considered in the first instance by the trial court on remand in the event of a retrial.

In sum, we vacate the judgment of the Superior Court and remand the case for further proceedings.

*So ordered.*